**REMAND REDETERMINATION**
***H&E Home, Inc. and Classic Metal Suppliers, et. al v. United States***
Court No. 21-00337 (Court of International Trade Jan. 4, 2023)
EAPA Cons. Case No. 7423

## I.   SUMMARY

U.S. Customs and Border Protection (CBP) has prepared this remand redetermination

pursuant to the opinion and remand order, dated September 7, 2022, issued by the U.S. Court of

International Trade (the Court) in *H&E Home, Inc., et al v. United States, et al*, Court No. 21-

00337 (hereinafter, the Remand Order).[1]  This remand concerns CBP's affirmative determination

of evasion of the antidumping and countervailing (AD/CV) duty orders on aluminum extrusions

from the People's Republic of China[2] against H&E Home Inc. (H&E), Classic Metals Suppliers

(Classic), Global Aluminum Distributor, LLC (Global), Industrias Feliciano Aluminum Inc.

(Industrias), JL Trading Corp. (JL), and Puertas y Ventanas J.M., Inc. (Puertas) (collectively, the

Importers),[3] under the Enforce and Protect Act (EAPA), as well as the subsequent affirmative

determination on administrative review.[4]  Following the initiation of the instant case, the United

States moved for voluntary remand[5] to "(1) provide the parties with public summaries of

business confidential information in the administrative record, (2) review and consider

documents that were mistakenly omitted from the administrative record, and (3) revisit and

---

[1] *See* Opinion and Order, *H&E Home, Inc., et al v. United States, et al*, Consol. Court No. 21-00337, (Ct. Int'l Trade Sept. 7, 2022), ECF No. 70 (Remand Order).
[2] *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (May 26, 2011); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (May 26, 2011) (collectively, the Orders).
[3] *See* Confidential Admin. Rec. Doc (C.R.) No. 824 (Trade Remedy Law Enforcement Directorate (TRLED) Notice of Determination, C.R. No. 824), ECF No. 26-2. Florida Aluminum Extrusion, LLC was subject to the original determination of evasion, however, it did not file an appeal to the Court of International Trade.  Florida Aluminum Extrusion, LLC does not have any unliquidated entries that were subject to the EAPA investigation, and thus this remand does not concern CBP's determination of evasion with respect to that importer.
[4] *See id*; *see also* Regulations and Rulings (R&R) Admin. Review, P.R. No. 712.
[5] Def.'s Mot. for Voluntary Remand (Aug. 5, 2022), ECF No. 65 ("Def.'s Vol. Rem. Mot.").

reweigh the record evidence in light of CBP's remand determination in EAPA Consol. Case No.

7348, *Global Aluminum Distributor LLC et al v. United States et al.,* Court No. 21-00198

*(Global)* in order for CBP to reevaluate its decision that substantial evidence of evasion exists."[6]

The Court granted the motion in full.[7]

 The CBP Office of Trade – Trade Remedy Law Enforcement Directorate (TRLED) –

acknowledges and recognizes that, after reevaluating the evidence on the record, Regulations and

Rulings (R&R) is reversing its original determination and finds that there is no evasion.[8]  As

such, TRLED will not revisit on remand the question of whether the Importers entered covered

merchandise into the customs territory of the United States through evasion, but will address the

procedural aspects of the remand order – which are, the addition and provision of public

summaries on the administrative record and the forwarding of inadvertently omitted documents

from the record to R&R for consideration.[9]

## II. BACKGROUND

 On January 28, 2021, TRLED issued a notice of determination of evasion finding that the

Importers entered Chinese-origin aluminum extrusions that were either commingled or

transshipped through the Dominican Republic Facility of Kingtom Aluminio S.R.L. (Kingtom) –

a Dominican Republic producer and exporter of aluminum extrusions – with a claimed country

of origin as the Dominican Republic.[10]  TRLED found that the Importers misrepresented the

country of origin as the Dominican Republic and ultimately evaded the applicable AD/CV duty

---

[6] *Id*. at 2.
[7] *See* Remand Order.
[8] Remand Redetermination for Enforce and Protect Act (EAPA) Consolidated Case Number 7423 (H327196) (Dec. 2, 2022), attached as an addendum. (R&R Remand Redetermination).
[9] *See* Remand Order.
[10] *See* TRLED Notice of Determination, C.R. No. 824.

orders by entering Chinese-origin aluminum extrusions into the United States.[11]  On June 4, 2021, R&R affirmed TRLED's determination of evasion.[12]

The Importers appealed the TRLED and R&R decisions finding evasion and commenced three separate suits, which were later consolidated.  Kingtom intervened as a Plaintiff Intervenor.[13]  On August 5, 2022, the United States filed a motion for voluntary remand, arguing that the remand "would allow CBP to correct certain procedural deficiencies in the administrative record for EAPA Consol. Case No. 7423," to include the provision of public summaries of business confidential information to the parties and affording the agency the opportunity to review and consider documents that were previously inadvertently omitted from the record.[14]  In its motion for voluntary remand, the United States recognized that CBP did not provide public summaries of business confidential documents, such as site visit summaries and responses to CBP Requests for Information, to the parties, as required by 19 C.F.R. § 165.4(a)(2).[15]  Further, after filing the administrative record with the Court, CBP learned that several documents were inadvertently omitted from the court filing, and as such, CBP supplemented the administrative record.[16]  However, after filing the supplemental administrative record documents, CBP became aware that certain documents were inadvertently not transmitted to R&R during the administrative review process and thus were not included in R&R's original *de novo* review.[17]  In its motion for voluntary remand, the Government also stated that on

---

[11] *Id*.

[12] R&R Admin. Review, P.R. No. 712.

[13] Order Granting Kingtom Aluminio's Motion to intervene, ECF No. 33, October 13, 2021.

[14] Def.'s Vol. Rem. Mot. at 4-5, ECF No. 65.

[15] *Id*. at 5.

[16] CBP mistakenly omitted several documents from the record, which were not reviewed by R&R when reaching its evasion determination.  This omission resulted in three separate motions for leave to supplement the record, which were granted by the court. *Id*.; *see* ECF Nos. 31, 32, 48, 49, 51, 52.

[17] Def.'s Vol. Rem. Mot. at 5, ECF No. 65; *see* Remand Order at 2.

remand "CBP may revisit and reconsider its decision regarding the central issue before the Court, namely whether there is substantial record evidence of evasion."[18]

The Court remanded the matter to CBP and directed the agency to: "(1) provide the parties with public summaries of business confidential information in the administrative record, (2) review and consider documents that were mistakenly omitted from the administrative record, and (3) revisit and reweigh the record evidence in light of CBP's remand determination in EAPA Consol. Case No. 7348[.]"[19]  In doing so, the court noted CBP's desire to "ensure its regulations governing procedures were followed and to reconsider the correctness of its decision after voluntary remand in a similar case ultimately led to a different result."[20]

## III.    REMAND ISSUES

### A.  Documentation Inadvertently Omitted from R&R's *De Novo* Review

Pursuant to EAPA, an importer found to have entered covered merchandise into the United States through evasion under 19 U.S.C. § 1517(c) may request a *de novo* review by R&R.[21]  Any such request for administrative review must be based on facts set forth in the administrative record.[22]  Likewise, any response to a request for administrative review is confined to the factual information already contained in the administrative record.[23]

In compliance with the Remand Order, TRLED transmitted to R&R the documents that were part of the administrative record during the EAPA investigation, but which had been inadvertently omitted when the administrative record was originally transferred to R&R for its *de novo* review.[24]  Among the documents previously omitted from R&R's review were: (1) Entry

---

[18] Def.'s Vol. Rem. Mot. at 5, ECF No. 65.
[19] Remand Order at 2.
[20] *Id*.
[21] *See* 19 U.S.C. § 1517(f)(1); *see also* 19 C.F.R. § 165.45.
[22] 19 C.F.R. § 165.41(f).
[23] *See, e.g.,* 19 C.F.R. § 165.42.
[24] *See* R&R Admin. Review; *see* R&R Remand Redetermination.

Data Reports and Fact Sheets; (2) CBP Form 28 Responses and cover letters from Industrias; and, (3) Record evidence from EAPA Cons. Case No. 7348 added to the record of this EAPA investigation.[25]  As part of the remand proceeding, TRLED transmitted previously omitted documents to R&R.[26]

TRLED also transmitted to R&R documents submitted to TRLED during this remand proceeding, to include the written arguments of the alleger, the Aluminum Extrusions Fair Trade Committee (AEFTC), dated November 7, 2022.  Additionally, R&R received revised public versions of documents previously placed on the administrative record submitted by AEFTC, Kingtom, Classic Metals, Global Aluminum and H&E Homes.  As discussed in further detail below, the submissions of Global Aluminum,[27] Industrias, JL Trading, and Puertas were rejected by CBP as deficient, and these importers failed to remedy the deficiency.

After reviewing the previously omitted administrative record documents and additional information submitted as part of remand proceeding, R&R reversed its previous finding of evasion and found that there is not substantial evidence to support a finding of evasion as to the Importers.[28]  The true and correct copy of R&R's findings on remand is attached as an addendum.

### B.  CBP Compliance with 19 C.F.R. § 165.4

Pursuant to CBP regulations, an interested party may claim confidential treatment for information it submits to CBP in connection with an investigation initiated in accordance with 19

---

[25] *See* Confidential (Conf.) Document (Doc.) Nos. 831-887 and Public (Pub.) Document Doc. Nos. 713-759, which were filed as part of the supplemental administrative record, ECF 35-36, 50, 53-54; *see also* R&R Remand Redetermination at 2, n. 2.
[26] *See* R&R Remand redetermination at 2.
[27] CBP rejected the CF-28 Response submitted by Global Aluminum, but accepted revised public versions of other documents.
[28] *Id.* at 6.

U.S.C. § 1517.[29]  Confidential treatment will be granted as long as the request and submission

satisfy the provisions of 19 C.F.R. § 165.4(a) and the information consists of trade secrets and

commercial or financial information obtained from any person which is privileged or

confidential in accordance with 5 U.S.C. § 552(b)(4).[30]  Certain information cannot be protected

as confidential, including, *inter alia*, the name of the party to the investigation submitting the

information, name and address of the importer against whom an allegation is made, description

of the covered merchandise, and the applicable AD/CVD orders.[31]  To the extent that business

confidential treatment is sought, the party claiming such treatment must indicate precisely which

information must be protected by enclosing the relevant information within single brackets; the

party must also clearly state that its submission contains business confidential information and

provide an explanation of why any bracketed information is entitled to such treatment.[32]

Moreover, a party must submit a public version, which is clearly marked, of any submission for

which it claims business confidential treatment.[33]  This public version must contain a summary

of the bracketed information in sufficient detail to permit a reasonable understanding of the

substance of the information.[34]  If summarization is not possible, the submitting party must

provide an explanation to support such claim.[35]  To the extent documents that CBP places on the

administrative record contain confidential business information of a party not subject to the

requirements of section 165.4, CBP will provide public summaries of such business confidential

information if applicable.[36]

---

[29] *See* 19 C.F.R. § 165.4.
[30] *See* 19 C.F.R. § 165.4(a).
[31] *See* 19 C.F.R. § 165.4(c).
[32] 19 C.F.R. § 165.4(a)(1).
[33] 19 C.F.R. § 165.4(a)(2).
[34] *Id.*
[35] *Id.*
[36] 19 C.F.R. § 165.4(e).

As part of its remand proceedings, CBP reviewed the documents it previously placed on the administrative record to determine whether the revised public versions of such documents included public summaries that comply with the requirements of 19 C.F.R. § 165.4(a)(2) and (e). CBP also reviewed submissions from the parties to the remand proceeding and provided the parties with a list of documents requesting that the parties provide any revised public versions of such documents, to include public summaries, or for that confidential information that could not be summarized, an explanation to that effect. For any information previously omitted from the public record in this context, CBP afforded the parties an opportunity to submit rebuttal information and written arguments. The process for this portion of the remand proceeding is described below.

### 1. Remand Procedure

On September 14, 2022, CBP issued a letter[37] to AEFTC, the Importers, and Kingtom, advising that CBP was reopening the administrative record for a limited period of time to permit the parties to submit revised business confidential and corresponding public versions of certain documents the parties had previously placed on the administrative record. CBP issued a revised letter on September 16, 2022,[38] in which it corrected its previous direction to the parties,[39] and

---

[37] *See* Letter from Brian M. Hoxie to Counsel for AEFTC, Importers, and Kingtom (Remand Parties), Re: *H&E Home Inc. et al v. United States, CIT No. 21-337*, (September 14, 2022 Letter).

[38] On September 16, 2022, CBP issued a revised letter with updated instructions to the Remand Parties. *See* Letter from Brian M. Hoxie to Counsel for Remand Parties, Re: *H&E Home Inc. et al v. United States, CIT No. 21-337*, (September 16, 2022), (September 16, 2022 Revised TRLED Letter); CBP also issued a notice to the Parties regarding the revised direction. *See* Email from Scott Hoefke to Remand Parties, Re: Remand for EAPA 7423: H&E Home Inc. et al v. United States, CIT No. 21-337 (September 16, 2022; 12:23 PM EDT) (September 16, 2022 CBP Email).

[39] In the September 14, 2022 letter, TRLED directed the Parties to review business confidential documents they previously submitted in order to provide a justification as to why any bracketed information consisted of trade secrets and commercial or financial information. In this letter, TRLED also advised that should parties choose to provide revised business confidential documents, they should specify any changes to the previous bracketing and provide a justification, including public versions with public summaries for any claimed confidential information. In its revised September 16, 2022 letter, TRLED removed these requirements.

provided an attachment containing a list of documents requiring revised public versions,[40] as well as an example of documents with public versions of confidential documents deemed sufficient so as to satisfy 19 C.F.R. § 165.4(a).[41]  In order to comply with the Court's order that CBP "provide the parties with public summaries of business confidential information in the administrative record" and "ensure its regulations governing procedures were followed," CBP requested that the parties to the remand review business confidential documents each entity previously submitted to the administrative record and provide revised public summaries compliant with 19 C.F.R. § 165.4(a)(2).[42] In doing so, CBP instructed the parties that public summaries of any bracketed business confidential information must include sufficient detail so as to permit a reasonable understanding of the substance of the bracketed information, in accordance with 19 C.F.R. § 165.4(a)(2).[43]  CBP explained to the parties that if business confidential documents were not susceptible to summarization, the parties must submit an explanation as to why the document cannot be publicly summarized.[44]  CBP further advised that new certifications pursuant to 19 C.F.R. § 165.4(d) were required to the extent any revisions to the request of confidential treatment were made.[45]  The parties were required to submit the revised documents no later than September 26, 2022 at 5:00 p.m. Eastern Daylight Time (EDT).[46]  Finally, CBP stated that, as part of the remand proceedings, it would provide revised public versions of the documents placed on the administrative record to the parties and permit an

---

[40] *See* September 16, 2022 Revised TRLED Letter, Attachment 1.
[41] *See id.*, Attachment 2.
[42] *Id.*; Remand Order at 2.
[43] *See* September 16, 2022 Revised TRLED Letter, at 2.
[44] *Id.*
[45] *Id.* at 3.
[46] *Id.* at 2-3.

opportunity to submit rebuttal information and written arguments relevant to the revised versions.[47]

On September 26, 2022, Classic Metals submitted a request for an extension until September 29, 2022, to submit revised public versions of its record documents in accordance with CBP's September 16, 2022 revised Letter to the Parties.[48]  That same day, TRLED responded to Classic Metals' request for an extension and granted the parties an extension to no later than 5:00 p.m. on September 29, 2022.[49]

On September 23, 2022, Industrias, JL Trading, and Puertas submitted their purported revised public versions of business confidential record documents, however, the submissions did not include public summaries of business confidential information.  On September 26, 2022, Global[50] and Kingtom[51] submitted their revised public versions of business confidential record documents.  Then, on September 29, 2022, AEFTC[52] and H&E Home[53] submitted their revised public versions of business confidential record documents.  Classic Metals submitted a partial response on September 26, 2022[54] and completed its submission on September 29, 2022.[55]

On September 29, 2022, TRLED placed revised public versions of its business confidential documents that it had previously placed on the administrative record.  Specifically,

---

[47] *See id.* at 3.

[48] *See* Letter from Counsel for Classic Metals to Brian M. Hoxie, Re: EAPA Case No. 7423: Request for Extension of the Revised Public Versions of Importers' Joint Submissions and Classic Metals' Initial RFI Response (September 26, 2022) (Classic Metals September 26, 2022 Letter to CBP).

[49] *See* Email from Scott Hoefke to Remand Parties, Re: Remand for EAPA 7423: H&E Home Inc. et al v. United States, CIT No. 21-337 [ref:_00Dt04XM5._500t012bmzT:ref ] (September 26, 2022; 2:43 PM EDT) (September 26, 2022 CBP Email).

[50] *See* Letter from Counsel for Global Aluminum to Scott A. Hoefke, Re: EAPA Case Number 7423 Global Aluminum Distributor, LCC Response to Request for Modified Public Version Submission (September 26, 2022).

[51] *See* Letter from Counsel for Kingtom to Brian M. Hoxie, Re: EAPA Case 7423: Kingtom Revised Public Version of RFI Response (September 26, 2022) (Kingtom resubmission) (submitted in two parts).

[52] *See* Letter from Counsel for AEFTC to Brian M. Hoxie, Re: H&E Home Inc. et al v. United States, CIT No. 21-337: Resubmission of Public Versions of Requested Documents (September 29, 2022) (AEFTC Resubmission).

[53] *See* H&E submissions of supplemental voluntary factual exhibits (Remand Cons 7423), undated.

[54] *See* Classic Metals September 26, 2022 Letter to CBP.

[55] *See* Part Two of Classic Metals' submissions, submitted on September 29, 2022.

TRLED added revised public summaries to its previously bracketed and redacted public versions of business confidential documents.[56]

October 14, 2022, CBP rejected the submissions of Global Aluminum,[57] Industrias, JL Trading, and Puertas because their submissions failed to comply with the requirements in 19 C.F.R. § 165.4(a)(2) as the submitted documents did not contain public summaries of business confidential information.[58]   In rejecting the submission, CBP advised that the agency had determined that the public versions contained numerous errors, including: (1) the sales documents and other company documents lacked adequate public summaries, and (2) business confidential information was redacted in the narrative sections of each submission and did not have the requisite corresponding public summaries.[59]   CBP provided these parties an opportunity to remedy this deficiency and requested that these companies resubmit the documents with the appropriate public summaries.[60]   For Global Aluminum, specifically, CBP only rejected its CF-28 response, noting that it failed to produce bracketed public versions and provide public summaries.[61]   CBP set a deadline for October 18, 2022 and extended this deadline to October 20, 2022 at the request of JL Trading, Industrias, and Puertas.[62]   However, these importers did not submit revised public versions containing public summaries by this deadline.[63]

---

[56] *See* TRLED's revised public versions of business confidential documents.
[57] CBP only rejected Global Aluminum's CF-28 response.
[58] *See* Email from Scott Hoefke to Remand Parties, Re: RFI (BC) [ref:_00Dt04XM5._500t012bmzT:ref ] (October 14, 2022; 3:19:18 PM EDT) (October 14, 2022 CBP Email).
[59] *Id*.
[60] *Id*.
[61] *See id*.
[62] *See* Email from Scott Hoefke to Remand Parties, Re: EAPA Task Extension has been requested [ref:_00Dt04XM5._500t012bmzT:ref] (October 17, 2022; 12:17 PM EDT); *see also* Email from Scott Hoefke to Remand Parties, Re: EAPA Task Extension has been requested [ ref:_00Dt04XM5._500t012bmzT:ref ] (October 17, 2022 1:59 PM EDT) (noting a correction to the date that the request for extension was received by the Parties).
[63] *See* Email from Patricia Tran to Remand Parties, Re: REMAND EAPA CONS. 7423 - H&E Home Inc. et al v. United States, CIT No. 21-337 (October 21, 2022 3:56:57 PM) (CBP October 21, 2022 Email).

On October 14, 2022, CBP advised the parties to the investigation that they were permitted to submit rebuttal information pertinent to the revised public versions of documents placed on the administrative record, as well as written arguments, by October 25, 2022 at 5:00 p.m. Eastern Time.[64]  The Parties did not submit any rebuttal information.

On October 21, 2022, CBP issued a letter to the parties stating that no further extensions would be granted to Global Aluminum, Industrias, JL Trading, and Puertas y Ventanas to resubmit revised public versions of confidential documents.  CBP further advised the Remand Parties that they were permitted to submit written arguments based on the revised public versions of the confidential documents that they would have submitted if they had access to the public summaries during the original investigation, until November 7, 2022 at 5:00 p.m., Eastern Time.[65]

On November 7, 2022, AEFTC submitted written arguments.[66]  On November 22, 2022, Industrias, JL Trading, and Puertas submitted rebuttal arguments, which CBP rejected as untimely on November 28, 2022.[67]  Following this submission, on November 23, 2022, AEFTC submitted a request to CBP to reject the response arguments on the grounds that CBP's remand procedure did not permit for the submission of response arguments and the submission was, therefore, untimely.[68]  No other party submitted written arguments.

### 2. Analysis

---

[64] *See* Email from Scott Hoefke to Parties, Re: Remand for EAPA 7423 [ ref:_00Dt04XM5._500t012bmzT:ref ] (October 14, 2022 3:22 PM).
[65] *See* CBP October 21, 2022 Email.
[66] *See* Letter from Counsel for AEFTC to Brian M. Hoxie, Re: *Aluminum Extrusions from the People's Republic of China, EAPA Case No. 7787 (Remand 7423):* Written Arguments of Aluminum Extrusions Fair Trade Committee (November 7, 2022) (AEFTC Written Arguments)
[67] *See* Email from Scott Hoefke to Parties, Re: Remand for EAPA 7423, Rejection of Submission (November 28, 2022 3:53 PM).
[68] *See* Letter to Brian M. Hoxie, Re: *Aluminum Extrusions from People's Republic of China, EAPA Case No. 7787 (Remand 7423):* Request to Reject Response Arguments (November 23, 2022).

CBP complied with the Court's Remand Order in conducting the remand proceeding.  In its Remand Order, and with respect to the procedural aspects of this case, the Court granted CBP's request to "provide the parties with public summaries of business confidential information in the administrative record" and "review and consider documents that were mistakenly omitted from the administrative record[.]"[69]  In doing so, the Court explained that "Customs wishes to ensure its regulations governing procedures were followed[.]"[70]

CBP promulgated 19 C.F.R. § 165.4 with a goal to protect business confidential information while simultaneously ensuring transparency of the investigation such that an alleged evader is notified of the allegation and parties to the investigation are able to participate in the proceeding.[71]  While CBP's regulations allow parties to claim confidential treatment for information submitted to CBP, parties must also submit a public version, including a public summary of such confidential information, as appropriate.[72]  As part of the remand process, CBP complied with its regulations by requiring the parties to submit revised public versions of administrative record documents and rejecting submissions where public summaries fell short of the requirement outlined in 19 C.F.R. §165.4(a)(2).  To ensure compliance with 19 C.F.R. § 165.4(a), CBP also allowed the parties an opportunity to submit any new information they would have submitted if they had access to the revised public versions during the original investigation and permitted the parties to submit rebuttal information and written arguments based on the revised versions.

---

[69] *See* Remand Order at 2.
[70] *Id*.
[71] Investigation of Claims of Evasion of Antidumping and Countervailing Duties, U.S. Customs and Border Protection, 81 Fed. Reg. 56,477, 56,479 (Aug. 22, 2016).
[72] *See id*; 19 C.F.R. § 165.4.

On remand, CBP complied with the provisions of 19 C.F.R. § 165.4(e) and (a)(2) by revising public versions of business confidential documents it previously placed on the administrative record to include public summaries, and directing Parties to submit revised public versions of information the parties previously placed on the administrative record.[73]  CBP likewise rejected submissions by the parties that lacked public summaries with "sufficient detail to permit a reasonable understanding of the substance of the information," as required by 19 C.F.R. § 165.4(a)(2).

Further, in compliance with the Remand Order, TRLED transmitted to R&R the documents that were part of the administrative record during the EAPA investigation, but which had been inadvertently omitted when the administrative record was originally transferred to R&R for its *de novo* review.[74]

In directing the parties to resubmit public versions containing sufficient public summaries, rejecting those that did not comply with its regulations, revising public versions of documents CBP previously placed on the record to contain sufficient public summaries, and transmitting inadvertently omitted documents to R&R, TRLED corrected the procedural deficiencies in the original investigation.

### *TRLED's Revised Public Versions*

On September 29, 2022, TRLED provided parties with revised public versions of business confidential documents it had placed on the administrative record.  The previous public versions contained only blank brackets of redacted business confidential information and lacked public summaries of the redacted information.  In order to remedy this deficiency, TRLED

---

[73] 19 C.F.R. § 165.4(a)(2) requires that the public summary of confidential business information contain "sufficient detail to permit a reasonable understanding of the substance of the information."
[74] *See* R&R Admin. Review; *see* R&R Remand Redetermination.

placed revised public versions containing public summaries of the following business confidential documents on the record: DC NTAC data reports (EAPA Cases 7422-7429), DC NTAC Report Factsheets (EAPA Cases 7422-7429), Final Determination of Evasion (EAPA Case 7423), Final Determination of Evasion (EAPA Case 7348), Initiation Memoranda to File for EAPA Cases (EAPA Cases 7423- 7426, 7428-7429), Internal Emails for Initiation (EAPA Cases 7422-7429), Internal Email for Interim Measures (EAPA Cons. Case 7423), Memoranda to File CBP Site Visit to Kingtom (EAPA Cases 7423-7429), Notice of Initiation of Investigation and Interim Measures (EAPA Case 7348), and Notice of Interim Measures (EAPA Case 7423).[75] TRLED found that the revised public documents satisfied the requirements of 19 C.F.R. § 165.4(a)(2), given that TRLED provided public summaries to the greatest extent feasible without releasing confidential information, such that the public summaries were sufficient so as to permit a reasonable understanding of the underlying substance of the information and comply with the requirements in 19 C.F.R. § 165.4(a)(2).  Examples of public summaries are as follows: "[dates]," "[descriptions]," "[countries]," "[formula]," "[item]," and "[name]."[76]

### *Classic Metals' Submissions*

On September 26, 2022 and September 29, 2022, respectively, Classic Metals submitted revised public versions of business confidential documents requested by CBP in Attachment 1 of its September 16, 2022 letter.[77]  Specifically, Classic Metals submitted a revised CF-28 response, administrative request, voluntary factual information, RFI response, rebuttal information, and joint written arguments.[78]  Some examples of the public summaries in the bracketed public versions include the following: "[company name]", "[diagram]", and "[details as indicated]"

---

[75] *See* TRLED's revised public versions of business confidential documents.
[76] *See* TRLED revised public version of Final Determination of EAPA 7348.
[77] *See* Classic Metals Resubmission.
[78] *Id*.

(when referring to information contained in tables, with the title row left unredacted). In CBP's view, Classic Metals' public summaries were sufficient to permit a reasonable understanding of the underlying substance of the information and, as such, comply with the requirements of 19 C.F.R. § 165.4(a)(2).[79]

### Kingtom Submissions

On September 26, 2022, Kingtom submitted revised public versions of business confidential documents requested by CBP in Attachment 1 of its September 16, 2022 letter.[80] Specifically, Kingtom submitted a revised public version of its RFI response with revised public summaries of proprietary information.[81] Some examples of the public summaries in the bracketed public versions include the following descriptions: "[DESCRIPTION OF CAPACITY]," "[DESCRIPTION OF MANAGEMENT METHOD]", and "[LOCATION OF RECORDS]."[82] CBP finds that, Kingtom's public summaries were sufficient to permit a reasonable understanding of the underlying substance of the information and comply with the requirements in 19 C.F.R. § 165.4(a)(2).[83]

### AEFTC Submissions

On September 29, AEFTC submitted revised public versions of confidential business record documents.[84] Specifically, AEFTC resubmitted the documents requested by CBP in Attachment 1 of its September 16, 2022 letter, which consisted of allegation narratives, allegation exhibits, a supplement to the allegation, voluntary factual information and comments on importers, written arguments, and response to administrative review.[85] AEFTC stated that its

---

[79] *See* 19 C.F.R. § 165.4(a)(2).
[80] *See* Kingtom Resubmission.
[81] *Id*.
[82] *Id*.
[83] *See* 19 C.F.R. § 165.4(a)(2).
[84] *See* AEFTC Resubmission.
[85] *See* AEFTC Resubmission and Revised TRLED September 16, 2022 Letter.

revised public versions included public summaries that would "permit a reasonable understanding of the substance of the bracketed information without revealing confidential information for which business confidential treatment has been granted."[86]  CBP finds that public summaries submitted by AEFTC permitted a reasonable understanding of the underlying substance of the information, and complied with the requirements of 19 C.F.R. § 165.4(a)(2).[87]

### *Global Aluminum's Submissions*

On September 26, 2022 Global Aluminum submitted revised public versions of business confidential documents requested by CBP in Attachment 1 of its September 16, 2022 letter.[88]  Specifically, Global Aluminum submitted a revised RFI, supplemental RFI, voluntary submission, and CF-28 response.[89]  CBP found that all of Global's resubmissions, with the exception of its CF-28 were sufficient.[90]  In rejecting Global's CF-28 response, CBP indicated that it lacked a public version with brackets and public summaries.[91]  As such, CBP finds that Global's submission of revised public version of its CF-28 response fails to satisfy the requirements of 19 C.F.R. § 165.4(a)(2).[92]  With respect to the remaining documentation submitted by Global Aluminum, CBP finds that the public summaries in those documents were sufficient so as to "permit a reasonable understanding of the substance of the bracketed information without revealing confidential information for which business confidential treatment has been granted."[93]

### *Industrias, JL Trading, and Puertas Submissions*

---

[86] *See* AEFTC Resubmission at 2.
[87] *See* 19 C.F.R. § 165.4(a)(2).
[88] *See* Kingtom Resubmission and Revised TRLED September 16, 2022 Letter.
[89] *Id*.
[90] *See* October 14, 2022 CBP Email.
[91] *Id*.
[92] *See* 19 C.F.R. § 165.4(a)(2).
[93] *Id*.

On September 23, 2022, Industrias, JL Trading, and Puertas submitted their purported revised public versions of documents, which did not include public summaries of business confidential information.  As requested by CBP in Attachment 1 of its September 16, 2022 letter, the parties were asked to submit revised public versions of their RFIs, supplemental RFIs, and CF-28s.[94]  CBP rejected each of the submissions because it found that the companies merely re-submitted original records that were submitted as part of the original administrative record and the public versions accompanying these confidential documents contained only redactions, without public summarization.  Thus, in CBP's view, the documents clearly lacked public summaries and did not satisfy the requirement in 19 C.F.R. § 165.4(a)(2).

## IV.     REBUTTAL INFORMATION AND WRITTEN ARGUMENTS

As part of the remand proceedings, CBP advised the parties of the opportunity to submit rebuttal information to the extent the revised public versions of documents contained information to which the parties did not have access to during the investigation.[95]  CBP required the parties to submit rebuttal information by October 25, 2022 at 5:00 p.m. Eastern Daylight Time (EDT).[96]  Additionally, any written arguments were due no later than 5:00 p.m. EDT on Monday, November 7, 2022.[97]  On remand, the Parties did not submit any rebuttal information. However, AEFTC did submit written arguments. [98]  On November 22, 2022, Industrias, JL Trading, and Puertas submitted rebuttal arguments, which CBP rejected as untimely on November 28, 2022.[99]  On November 23, 2022, AEFTC submitted a request to CBP to reject the response arguments on the grounds that CBP's remand procedure did not permit for the submission of response

---

[94] *See* Revised TRLED September 16, 2022 Letter.
[95] *See* October 14, 2022 CBP Email.
[96] *Id*.
[97] *See* CBP October 21, 2022 Email.
[98] *See* AEFTC Written Argument.
[99] *See* Email from Scott Hoefke to Parties, Re: Remand for EAPA 7423, Rejection of Submission (November 28, 2022 3:53 PM).

arguments and the submission was, therefore, untimely.[100]  No other written arguments were submitted.

In its November 7, 2022 written argument, AEFTC challenged CBP's decision not to apply adverse inferences to the parties who failed to submit corrected public versions of their submissions.[101] AEFTC claimed that CBP's request for parties to submit revised public versions with public summaries of confidential business information was within the court's order and reasonable.[102]  As such, it argued that CBP should have applied adverse inferences against Global Aluminum, Industrias, JL Trading, and Puertas due to their failure to cooperate to the best of their ability, in accordance with 19 U.S.C. §1517(c)(3) and 19 C.F.R. § 165.6.  CBP finds that under the present circumstances, the application of adverse inferences against Global Aluminum, Industrias, JL Trading, and Puertas is not warranted for several reasons.  First, the decision to apply adverse inferences is discretionary, in that both 19 U.S.C. §1517(c)(3) and 19 C.F.R. § 165.6(a), provide that CBP "*may*", not "shall," apply adverse inferences upon finding that a party failed to cooperate to the best of its ability.  As such, by statute, CBP is not required to apply adverse inferences even if parties fail to cooperate to the best of their ability to CBP's request for information.  Second, in determining that it would not apply adverse inferences, CBP considered the procedural posture of this case – that the original documents submitted by all parties are on the administrative record.  As such, the failure of the four importers to resubmit revised public summaries did not create a gap of information on the administrative record, as on remand CBP was not requesting any new information, but revised public versions of information already on the administrative record.  To apply adverse inference for failure to resubmit public versions, on

---

[100] *See* Letter to Brian M. Hoxie, Re: *Aluminum Extrusions from People's Republic of China, EAPA Case No. 7787 (Remand 7423):* Request to Reject Response Arguments (November 23, 2022).
[101] *Id.* at 3.
[102] *Id.* at 3-4.

remand, would be futile as CBP already reviewed and considered confidential versions of all documents and the parties have already accessed such documents under the judicial protective order.[103]  Third, CBP determined that, in order to comply with the remand order, TRLED would address procedural deficiencies on the record, while R&R would "revisit and reweigh the record evidence in light of CBP's remand determination in EAPA Consol. Case No. 7348, *Global Aluminum Distributor LLC et al. v. United States et al,* Court No. 21-00198[.]"[104]  Accordingly, in light of the unique circumstances of this remand, CBP has declined to apply adverse inferences to the parties' failure to resubmit the requested revised public versions of business confidential information.

CBP rejected the November 22, 2022 rebuttal arguments submitted by Industrias, JL Trading, and Puertas as untimely.[105]  The submission, which these parties claimed to be rebuttal arguments, was submitted fourteen (14) days after the deadline for submissions set in CBP's October 21, 2022 letter to the Parties.  In its November 28, 2022 email to the Parties rejecting the submission as untimely, CBP explained that "[w]hile [19 C.F.R. §] 165.26(b) allows for submission of written arguments within 15 days, the regulation applies to investigation procedures, and remand procedures are not addressed by regulation.  As such, the deadlines set forth in CBP's October 21, 2022 letter governs this remand's procedures."  CBP went on to further explain that the October 21, 2022 letter did *not* allow parties an opportunity to submit responses to written arguments.[106]  Further, even if the submissions were timely, the submissions of Industrias, JL Trading, and Puertas would be rejected as falling outside the scope.

---

[103] *See* 19 C.F.R. § 165.6(a).
[104] Remand Order at 2.
[105] *See* Email from Scott Hoefke to Parties, Re: Remand for EAPA 7423, Rejection of Submission (November 28, 2022 3:53 PM).
[106] *Id*.

Specifically, 19 C.F.R. § 165.26(b)(1) requires that rebuttal arguments "be limited to the issues raised in the written argument" and that "any portion of a response that is outside the scope of the issues raised in the written argument will not be considered[.]"  The submissions at issue challenged CBP's demand for the resubmission of public responses to include public summaries on remand and how the agency conducted its administrative proceedings on remand, rather than rebut the arguments made by AEFTC regarding CBP's decision to not apply adverse inferences.  Accordingly, for the reasons outlined above, CBP rejected the submission.

## V.  REMAND COMMENTS

On December 2, 2022, CBP provided the parties to the investigation with the R&R draft remand redetermination and the TRLED draft remand determination and advised the parties that they are permitted to submit comments no later than 5:00 p.m. Eastern Time on Friday, December 9, 2022.[107]  On December 9, 2022, AEFTC,[108] Industrias, JL Trading, and Puertas[109] submitted comments.

In its comments, AEFTC challenged R&R's substantive determination in reversing its previous decision and finding no substantial evidence of evasion as arbitrary and capricious and inappropriate.[110]  With respect to TRLED's determination, AEFTC reiterated its arguments that it made in its November 23, 2022 written arguments that CBP should have applied adverse inferences against the parties that failed to resubmit updated public versions for the administrative record on remand.[111]  CBP is not required by statute to apply adverse inferences,

---

[107] *See* Email from Scott Hoefke to remand parties, Remand for EAPA 7423: H&E Home Inc. et al v. United States, CIT No. 21-337 (Dec. 2, 2022 4:01:44 PM).
[108] *See* Email from AEFTC counsel Public Service of Filing in EAPA 7787 (Remand 7423) (Dec. 9, 2022 4:52 PM).
[109] *See* Email from counsel for Industrias, JL Trading, and Puertas, RE: Remand for EAPA 7423:  H&E Home Inc. et al v. United States, CIT No. 21-337 (Dec. 9, 2022 4:47 PM).
[110] *See* AEFTC Remand Comments, dated December 9, 2022, at 2-6. Given that TRLED's portion of the remand concerns procedural deficiencies, it will not be addressing the arguments AEFTC made regarding R&R's determination.
[111] *See id*. at 7-8.

and for the same reasons discussed above with respect to the unique circumstances in this particular case, TRLED maintains its decision not to apply adverse inferences against Global Aluminum, Industrias, JL Trading, and Puertas.

In their joint comments, Industrias, JL Trading, and Puertas expressed their agreement with R&R's reversal of its prior determination of evasion.[112]  Regarding TRLED's determination, these parties challenged CBP's request to the interested parties on remand to submit revised public versions of confidential record documents with public summaries, arguing that such a decision went beyond the scope of the Court's remand order.[113]  The parties also argued that the samples of public versions provided by CBP to the parties for reference were inadequate, arguing that the public summaries CBP provided as samples were not sufficient so as to comply with 19 C.F.R. § 165.4(a)(2).[114]

Industrias, JL Trading, and Puertas also argue that CBP misinterpreted the court's Remand Order and that the order did not require the parties to resubmit the documents that CBP had already accepted.[115]  As discussed above, the Remand Order, with respect to the procedural aspects of this case, was issued in response to CBP's request to "provide the parties with public summaries of business confidential information in the administrative record" and "review and consider documents that were mistakenly omitted from the administrative record[.]"[116]  The underlying rationale for this decision was "Custom['s] wish[] to ensure its regulations governing procedures were followed[.]"[117]  By directing the parties to submit revised public versions of

---

[112] *See* Industrias, JL Trading, and Puertas Remand Comments, dated December 9, 2022, at 2-3. Given that TRLED's portion of remand concerns procedural deficiencies, it will not be addressing the comments of Industrias, JL Trading, and Puertas regarding R&R's determination.
[113] *See id* at 4.
[114] *Id*. at 5.
[115] *Id*. at 4.
[116] *See* Remand Order at 2.
[117] *Id*.

administrative record documents and rejecting submissions which fell short of the public summary requirement, in 19 C.F.R. § 165.4(a)(2), CBP ensured compliance with its regulations and corrected the record in this proceeding.

CBP's regulations provide that a party must submit a public version of business confidential information, which is clearly marked, of any submission for which it claims business confidential treatment.[118]  This public version *must* contain a summary of the bracketed information in sufficient detail to permit a reasonable understanding of the substance of the information.[119]  If summarization is not possible, the submitting party must provide an explanation to support as much.[120]  The regulation requires public summaries both from CBP and the interested parties that are submitting information to CBP.[121]   During the original investigation, the interested parties failed to submit such public summaries, as required by the regulation.  On remand, CBP rectified the procedural issues in the original investigation by providing public summaries of confidential information that CBP had placed on the record pursuant to section 165.4(e).  CBP also directed the parties to submit revised public versions that included such public summaries and rejected those submissions that did not comply with the requirements in section 165.4(a)(2).  By requiring the resubmission of public documents from all parties, CBP applied its regulation in an even-handed manner, and enforced its requirements as they apply to CBP, as well as to the parties.  Any other process would result in piecemeal enforcement of CBP's regulations.  As such, CBP complied with its regulations as well as the Court Order on remand.

---

[118] 19 C.F.R. § 165.4(a)(2).
[119] *Id.*
[120] *Id.*
[121] *Id*. § 165.4(a)(2), (e).

Additionally, Industrias, JL Trading, and Puertas challenge CBP's citation to *Royal Brush v. United States*, 483 F. Supp. 3d 1294 (Ct. Int'l Trade 2020) and *Ad Hoc Shrimp Trade Enforcement Committee v. United States*, Court No. 21-00129, Slip Op. 22-53 (Ct. Int'l Trade, May 23, 2022) as precedent for requiring revised public versions containing summaries of confidential documents on remand and distinguish the facts of those cases from those of the instant action.  The parties' arguments are inapposite.  In requiring submission of public summaries, CBP relied on its regulation which requires that all parties who submit confidential information on the record provide public summaries of such confidential information.[122]  These two cases only demonstrate that the CIT has in fact required CBP to enforce and comply with its regulations.

Industrias, JL Trading, and Puertas also take issue with the samples of public versions provided by CBP to the parties for reference, and argued that the public summaries of bracketed information in the samples was did not comply with 19 C.F.R. § 165.4(a)(2), as "they add nothing to the understanding of the substance of the bracketed confidential information; that is evident from the column or box headings."[123]  TRLED first notes that CBP did not reject these parties' submissions because the descriptions contained within the brackets of the public versions were insufficient, but that their submissions lacked any description or a summary of confidential information whatsoever.  Further, we note that the parties do not challenge the sufficiency of the public summaries of confidential information that CBP placed on the record pursuant to section 165.4(e).  Nor do they argue that CBP's public summaries did not provide them with a reasonable understanding of the confidential information, such that they were not able present arguments to CBP.  The parties also do not challenge the sufficiency of public summaries

---

[122] *id*. § 165.4(a)(2).
[123] *See* Industrias, JL Trading, and Puertas Remand Comments at 4-5.

submitted by other interested parties.  The parties' only challenge relates to the sufficiency of the sample public summaries that TRLED provided to the parties as an example of how CBP expected the parties to revise public versions of record documents.  The samples TRLED provided were just that – samples – to demonstrate to the parties as to what public summaries should look like.  It is worth noting that other interested parties, Global, AEFTC, and Kingtom were able to use the samples TRLED provided and submitted adequate public summaries.  The samples were put together as a guide to demonstrate what type of summary information, in CBP's view, would provide the public with a reasonable understanding of the substance of bracketed confidential information to the greatest extent feasible without releasing such confidential information.

Industrias, JL Trading, and Puertas also argue that the requirement for public summaries was an unnecessary exercise that was not designed to fill a gap in the record.[124]  However, the purpose of public summaries was to rectify procedural deficiencies in the original investigation by complying with the regulatory requirements and for the parties in the investigation to access the additional public information that the regulations require and were not provided during the original investigation.  CBP also allowed the parties to submit any additional documents and arguments based on those public summaries.  As such, the procedure was designed to benefit all parties to the investigation with an additional opportunity to access the public information on the administrative record.  Notably, neither Industrias, JL Trading, and Puertas submitted any public summaries of bracketed confidential information.  As discussed above, CBP determined not to apply adverse inferences and, as such, neither Industrias, JL Trading, nor Puertas suffered any consequences for failure to submit public summaries.

---

[124] *See* Industrias, JL Trading, and Puertas Remand Comments at 11.

Finally, Industrias, JL Trading, and Puertas argue that CBP improperly rejected Industrias, JL Trading, and Puertas' submission of rebuttal comments, stating that CBP did not apply section 165.26(b)(1) of its regulations.[125]  As discussed above, the regulation applies to the rebuttal arguments submitted during the investigation.  The deadlines on remand were governed by the communications issued by CBP.  Due to the limited time available on remand, CBP only allowed the parties to submit written arguments with respect to the public summaries placed on the record.  Industrias, JL Trading, and Puertas did not submit written arguments before the deadline identified by CBP.  Because CBP had not stated that it was allowing the parties to submit rebuttals to written arguments, CBP rejected these parties' submission as untimely. Further, the submission went outside the scope of the written arguments submitted by AEFTC, and CBP determined that it was not a proper rebuttal.

## VI.   CONCLUSION

In accordance with the Court's remand order, CBP analyzed various issues including compliance with the relevant regulations governing the treatment of public summaries.  TRLED allowed the parties to submit revised public versions of business confidential documents on the administrative record and placed revised public versions, containing public summaries, of business confidential documents that it previously placed on the record.  After doing so, CBP permitted the parties to the investigation to submit rebuttal information and additional arguments.  Further, TRLED transmitted all documents and information previously omitted from the record, as well as any information and arguments submitted on remand, to R&R for review.

---

[125] *See* Industrias, JL Trading, and Puertas Remand Comments at 9.

As such, CBP complied with the Remand Order and corrected any procedural deficiencies from the original investigation.

BRIAN M
HOXIE
Digitally signed by BRIAN
M HOXIE
Date: 2023.01.04
16:52:12 -05'00'

Brian M. Hoxie
Director – Enforcement Operations Division
Trade Remedy Law Enforcement Directorate
Office of Trade, U.S. Customs & Border Protection

**ADDENDUM**



**U.S. Customs and Border Protection**

**January 5, 2023**

**PUBLIC DOCUMENT**

OT:RR:BSTC:PEN H327196 BEK
        x-ref: H317423 BEK

Jennifer Diaz, Esq.
Diaz Trade Law, P.A.
Counsel for Global Aluminum
Distributor, LLC
12700 Biscayne Blvd, Suite 301
North Miami, FL, 33181

Lizbeth Levinson, Esq.
Brittney Powell, Esq.
Fox Rothschild LLP
Counsel for Classic Metals Suppliers
1030 15th Street, NW Suite 380 East
Washington, D.C. 20005

Alberto Castañer, Esq.
Castañer & Cia P.S.C.
Counsel for H&E Home
Mai Center, Marginal Kennedy
771 Calle 1, Suite 204
San Juan, PR 00920

Beth Ring, Esq.
Sandler, Travis & Rosenberg, P.A.
Counsel for Industrias Feliciano
Aluminum, Inc., JL Trading Corp., and
Puertas y Ventanas, J.M., Inc.
675 Third Avenue, Suite 1805-6
New York, NY 10017

Robert DeFrancesco, Esq.
Elizabeth Lee, Esq.
Wiley Rein LLP
Counsel for Aluminum Extrusions Fair
Trade Committee
1776 K Street, NW
Washington, D.C. 20006

Re:     Remand Redetermination for Enforce and Protect Act ("EAPA") Consolidated Case
        Number 7423; *Aluminum Extrusions from the People's Republic of China: Antidumping Duty
        Order*, 76 FR 30650 (May 26, 2011), and *Aluminum Extrusions from the People's Republic
        of China: Countervailing Duty Order*, 76 FR 30653 (May 26, 2011); Global Aluminum
        Distributor, LLC; Classic Metals Suppliers, Industrias Feliciano Aluminum, Inc., JL
        Trading Corp., Puertas y Ventanas, J.M., Inc., H&E Home; 19 U.S.C. § 1517

Dear Counsel:

This is a remand redetermination made pursuant to the Court of International Trade's
("CIT") remand order, dated September 7, 2022, in *H&E Home Inc., et al. v. United States, et
al.*, in EAPA Consolidated Case Number 7423.[1]

---

[1] *See* Order, *H&E Home, Inc., et al v. United States, et al*, Consol. Court No. 21-00337 (Ct. Int'l Trade Sept. 7,
2022), ECF No. 70 ("Order").

U.S. Customs and Border Protection ("CBP"), Office of Trade ("OT"), Regulations and Rulings ("R&R"), has received and reviewed from the Trade Remedy Law Enforcement Directorate ("TRLED") of OT the documents collected during the EAPA investigation and omitted from the record prior to R&R's original *de novo* review decision (H317423), dated June 4, 2021 ("R&R June 4 FAD").[2]  Further, because the record documentation was amended to include public summaries and the proceedings on remand have allowed the parties to make arguments with regard thereto, R&R has reviewed and considered that related documentation, including the written arguments of the alleger, the Aluminum Extrusions Fair Trade Committee ("AEFTC").  The remaining parties, Global Aluminum Distributor, LLC ("Global Aluminum"); Classic Metals Suppliers ("Classic Metals"); Industrias Feliciano Aluminum, Inc. ("Industrias"); JL Trading Corp. ("JL Trading"); Puertas y Ventanas, J.M., Inc. ("Puertas y Ventanas"); and, H&E Home ("H&E") (collectively, "Importers"),[3] did not provide written arguments.  Florida Aluminum Extrusion, LLC was subject to the original determination of evasion, however, it did not file an appeal to the CIT.  Florida Aluminum Extrusion, LLC does not have any unliquidated entries that were subject to the EAPA investigation, and thus this remand does not concern CBP's determination of evasion with respect to that importer.  R&R has also further analyzed all administrative record documents that were reviewed during the original *de novo* review, in reaching the final conclusion set forth in this remand redetermination.

The parties were also afforded an opportunity to provide written comments on a draft remand redetermination.  The alleger, AEFTC, submitted written comments and three importers, Industrias, JL Trading, and Puertas y Ventanas, submitted joint comments.  No comments were received from Global Aluminum, Classic Metals, or H&E.  The joint comments from Industrias, JL Trading, and Puertas y Ventanas agreed with the findings in the R&R draft remand redetermination dated December 2, 2022.[4]  The alleger, AEFTC, has opposed the findings in the draft remand redetermination, which it details in its written comments.[5]  Specifically, AEFTC argues that the draft remand redetermination uses the same evidence upon which evasion was originally found to meet the substantial evidence standard to now find that there is no substantial evidence of evasion and that such reversal is arbitrary and capricious.  AEFTC provides examples of the evidence used in both the R&R June 4 FAD and this remand redetermination to reach opposite findings.  Such examples are discussed in greater detail below.  AEFTC additionally argues that R&R should provide due deference to the original determination of evasion made by TRLED and that R&R's reliance

---

[2] *See* Confidential Document Nos. 831-887 and Public Document Nos. 713-759, which were filed as part of the supplemental administrative record.  Those documents previously omitted from the record transmitted to R&R during the original *de novo* review consist primarily of: (1) Entry Data Reports and Fact Sheets; (2) CBP Form 28 Responses and cover letters from Industrias; and, (3) Record evidence from EAPA Cons. Case No. 7348 added to the record of this EAPA investigation.  Some of the documents previously omitted and transmitted to R&R on remand include documents transmitted to R&R and reviewed during the original *de novo* review in EAPA Cons. Case No. 7348.

[3] Kingtom, the manufacturer of the merchandise imported by the Importers and subject to R&R's Final Administrative Determination under case number H317423, dated June 4, 2021 ("R&R June 4 FAD"), was not a party to the investigation, and, thus, could not participate in R&R's original administrative review, pursuant to 19 U.S.C. § 1517(f)(1); *see also* 19 C.F.R. § 165.41(a).  Kingtom is, however, a Plaintiff-Intervenor in the CIT action.

[4] *See* Written Arguments in Response, dated December 9, 2022, pages 2-3.

[5] *See* AEFTC's Comments on Draft Remand Redetermination, dated December 9, 2022, pages 2-6.

on arguments raised in litigation in a separate EAPA matter before the CIT is inappropriate as those arguments are not part of the record in this case. R&R has reviewed and considered these parties' comments to the extent they pertained to this R&R remand redetermination.

R&R has reconsidered its original finding of substantial evidence of evasion and affirmance of TRLED's determination of evasion, dated January 28, 2021, in EAPA Consolidated Case Number 7423 ("TRLED January 28 Determination").

This R&R remand redetermination focuses upon the central issue of whether there is substantial record evidence of evasion. Procedural issues are addressed by TRLED separately.

The Background and Law sections in the R&R June 4 FAD are incorporated by reference as if fully set forth herein.

Further review and analysis of the administrative record as transmitted by TRLED to R&R, both prior to the issuance of the R&R June 4 FAD and during this remand period, and the written comments on the draft remand redetermination submitted by some of the parties during this remand period, continue to lead R&R to reach a different conclusion in this remand, from the conclusion reached in the June 4 FAD. We note that the facts and circumstances of this EAPA case and EAPA Cons. Case No. 7348 are almost identical,[6] with many of the same record documents gathered in EAPA Cons. Case No. 7348 added to the administrative record in EAPA Cons. Case No. 7423. As R&R did in EAPA Cons. Case No. 7348, R&R is reversing its original finding of evasion in the instant EAPA Cons. Case No. 7423. However, we wish to provide additional clarity in response to AEFTC's argument[7] regarding the extent to which court filings in the other EAPA case may have played a role herein. R&R notes that the briefs filed in EAPA Cons. Case No. 7348 were not reviewed during the drafting of this remand redetermination and the arguments raised in that litigation are only mentioned here because they led to the remand redetermination in EAPA Cons. Case No. 7348, which is closely related to and has significant overlap with this EAPA Cons. Case No. 7423.

There is no dispute that Kingtom has the ability to produce aluminum extrusions in the Dominican Republic.[8] Rather, the dispute is whether Kingtom had the ability to produce and did produce the aluminum extrusions it exported to the United States during the period here at issue.[9] In the June 4 FAD, we were unpersuaded that the aluminum extrusions exported to the United States had been produced in the Dominican Republic. After further reconsideration, we find that the record does not contain sufficient evidence to meet the evidentiary standard of substantial evidence of evasion because documents within the record were erroneously disregarded as unreliable during the investigation and original *de novo* review. The R&R June 4 FAD focused primarily on some alleged discrepancies in the

---

[6] On June 13, 2022, R&R reversed its original Final Administrative Determination under case number H315648 dated March 18, 2021 in EAPA Cons. Case No. 7348, on remand in *Global Aluminum Distributor LLC v. United States*, Consol. Court No. 21-198, (Ct. Int'l Trade). *See* R&R's Final Administrative Determination under case number H324177, dated June 13, 2022.
[7] *See* AEFTC's Comments on Draft Remand Redetermination, page 6.
[8] *See* TRLED January 28 Determination, page 17. *See also* R&R June 4 FAD, pages 12-13.
[9] *See* R&R June 4 FAD, pages 13-14.

documentation provided by Kingtom, as well as on the lack of production capability analysis performed by the Importers during their own site visits, while disregarding the remaining record evidence demonstrating Kingtom's production capabilities and capacity and explanations for a majority of the discrepancies described in the original TRLED January 28 Determination. Thus, upon further review of the administrative record, we find that our focus on the claimed discrepancies was misplaced, and that substantial evidence on the record as a whole does not support a finding of evasion.

As shown within the record, Kingtom documented its daily production per each aluminum extrusion press as part of its normal course of business and provided such documentation to CBP in response to the initial Request for Information ("RFI") in EAPA Cons. Case No. 7348.[10] There is nothing in the record to discredit these daily production records as unreliable or to otherwise contradict Kingtom's assertions that such records were kept in the normal course of business. While AEFTC is correct in its Comments on Draft Remand Redetermination that the production records do not show Kingtom operating at full capacity,[11] that does not mean Kingtom did not produce all of its aluminum extrusion exports to the United States, as operating at full capacity was not required to meet the exportation quantities at issue. The record shows that, when the number of aluminum extrusion presses was cited in statements regarding site visits, there was never fewer than three (3) operable aluminum extrusion presses observed at Kingtom.[12] Kingtom provided the monthly production capacity for three (3) aluminum extrusion presses in its initial RFI Response, demonstrating the ability to manufacture the full amount of goods it exported to the United States.[13] Kingtom also produced additional records to demonstrate the addition of more extrusion presses over the course of time when the site visits occurred and later on during the period of investigation.[14] One of the alleger's experts observed seven (7) aluminum extrusion presses during his visit to the facility.[15] These additional extrusion presses also had varying total production capacities and a greater capacity to produce larger aluminum extrusions that Kingtom exported to the United States.[16] This would help account for the increased production numbers seen in Kingtom's production records over time.[17] Indeed, the other expert declaration provided by the alleger regarding visits to Kingtom provided a rough calculation of the monthly capacity, under realistic conditions, for only the smallest aluminum extrusion press found at the facility, but did not provide similar calculations for the two larger aluminum extrusion presses that he observed, despite acknowledging that larger presses would have a greater output.[18] There are no other calculations of the aluminum extrusion press capabilities and capacities found within the record, except for what Kingtom has provided. The record does not show that Kingtom ever exported aluminum extrusions in amounts that exceeded the provided overall maximum

---

[10] *See* Kingtom's RFI Response Exhibit 21.

[11] *See* AEFTC's Comments on Draft Remand Redetermination, page 4.

[12] *See* Allegation Exhibit 3, page 2. *See also* Attache Report.

[13] *See* Kingtom's RFI Response, page 2.

[14] *See* Kingtom's Supplemental RFI Response Exhibit S-14. *See also* Kingtom's RFI Response, page 3.

[15] *See* Allegation Exhibit 9, page 1.

[16] *See* Kingtom's RFI Response Exhibit 19. *See also* Kingtom's Supplemental RFI Response, pages 34-35 and Kingtom's Supplemental RFI Response Exhibit S-15.

[17] *See* Kingtom's RFI Response Exhibit 21.

[18] *See* Allegation Exhibit 3, page 3. The monthly figure of 280,104 lbs. only accounts for four (4) weeks in every month and may be higher to account for the additional four (4) weeks in a calendar year.

capacity, nor does the record indicate that the amount of days/time that the aluminum extrusion presses were running and producing at Kingtom would not fulfill the orders placed.  In other words, no evidence has been provided that contradicts that Kingtom had the production capacity to produce the U.S. exports based on the number of presses that were in operation during the period of investigation.

The record evidence includes copies of purchase orders, employee records, contracts, bank records, invoices, financial statements, production records, raw material purchase documentation, videos, and photographs, all indicating that Kingtom had the capacity and capability to produce aluminum extrusions in its Dominican Republic factory in the quantities that were exported to the United States on a custom order basis.[19]  This documentation has not been shown to be unreliable and no evidence on the record contradicts it.  All of this documentation needed analysis and consideration before conclusions could be reached regarding Kingtom's production capacity.  The TRLED January 28 Determination and the R&R June 4 FAD did not provide such an analysis but, rather, placed much significance and weight upon the alleger's site visit declarations to find a lack of production capacity at Kingtom.[20]

The TRLED January 28 Determination and the R&R June 4 FAD focused more upon claimed discrepancies found within the documents provided by Kingtom during the investigation in EAPA Cons. Case No. 7348, to bolster a finding of substantial evidence of evasion.  Upon further reflection and analysis, however, we now find that many of those discrepancies either have logical explanations provided during the investigation and/or final administrative review process which were erroneously disregarded or never received proper follow-up during the course of the investigation.  As a result, we cannot justify placing such great weight on the perceived discrepancies, and we must reverse course as to our original finding of substantial evidence of evasion.

Most significantly, although not discussed in the R&R June 4 FAD, the TRLED January 28 Determination appears to conflate the monthly theoretical production volume and monthly sales volume figures provided by Kingtom and treat them as interchangeable when they are wholly different figures.  As Kingtom produces aluminum extrusions customized to the specifications of each of its customers,[21] it stands to reason that production numbers would fluctuate between months, as the number of orders produced in a given month would depend on the number of orders received.  At the same time, monthly production numbers would not mirror monthly sales numbers, as production of an order could straddle two different months or otherwise be completed in one month but not shipped until the next.  Even if Kingtom had continuous, consistent production (*i.e.,* did not produce customized aluminum extrusions to order) throughout each month, the monthly sales volume would still fluctuate depending upon the number of orders received and filled in each month.  This multi-month timeline for an order's receipt, production and exportation was illustrated by Kingtom in its RFI Response provided in EAPA Cons. Case No. 7348.  It shows that the order was placed in February 2020 but was not fully prepared and ready for shipment until

---

[19] *See* Kingtom's RFI Response, page 9.
[20] *See* TRLED January 28 Determination, page 12-13.
[21] *See* Kingtom's RFI Response, page 9.

March 2020.[22]  Generally speaking, it stands to reason that production and sales numbers cannot be viewed within rigid timeframes and expected to mirror one another due to fluctuations and the realities of manufacturing.  This alleged discrepancy goes to the core question presented in this case and is indeed not a discrepancy; the June 4 R&R FAD erred in not addressing this point.  We correct that error in this remand redetermination.

Moreover, the record indicates that TRLED did not follow up on the perceived inconsistencies upon which findings with regard to the sizing capabilities of Kingtom's aluminum extrusion machines were made during the course of the investigation.  Rather, TRLED relied upon a generalized statement from one of the alleger's experts to find that some of the aluminum extrusion presses present at Kingtom could not produce the sizes of aluminum extrusions exported to the United States.[23]  There is no evidence within the record, however, that limitations on the production capabilities of the aluminum extrusion presses at Kingtom were tested and proven correct.  The alleger's expert declaration does not state definitively that Kingtom could not produce the size of the aluminum extrusions,[24] nor is there evidence that Kingtom was asked about the sizes of the aluminum extrusions that its presses could produce.

Additionally, other inconsistencies noted by the TRLED January 28 Determination, but not addressed in the R&R June 4 FAD, have logical explanations as provided by the Importers in their Requests for Administrative Review, but were not previously followed up on during the course of the investigation.  For example, the TRLED January 28 Determination references differences found between Kingtom's bank statements and its accounts receivable records or the bank statements of some of the Importers, as a factor in finding documentation from Kingtom and the Importers unreliable.[25]  A majority of those differences in payment amounts by the Importers and the actual amount deposited into Kingtom's bank account are consistently small figures.[26]  Kingtom's bank statements and summary of transactions show that its bank charged transaction fees.[27]  While TRLED asked a number of follow-up questions in the Supplemental RFI to Kingtom as part of EAPA Cons. Case No. 7348, an explanation for such discrepancies was never requested.  These discrepancies were not brought to the attention of the Importers and Kingtom until the issuance of either the TRLED Determination in EAPA Cons. Case No. 7348 or the TRLED January 28 Determination.  The information used by the Importers to explain the discrepancies is found within the record and no new facts have been introduced by the Importers during the final administrative review process.  At the same time, minor discrepancies in financial records or invoices are not indicative of a lack of aluminum extrusion production capacity.

The record also indicates that TRLED never followed up on inconsistencies regarding the mold and die information provided by Kingtom as part of its Supplemental RFI Response in EAPA Cons. Case No. 7348 in comparison with Kingtom's Equipment List.  Given that

---

[22] *See* Kingtom's RFI Response Exhibit 2.  *See also* Classic Metals's Request for Administrative Review, page 14.
[23] *See* TRLED January 28 Determination, pages 8-9.
[24] *See* Allegation Exhibit 3, pages 3-5.
[25] *See* TRLED January 28 Determination, page 15.
[26] *See id.* at Tables 8-10.
[27] *See* Kingtom RFI Response Exhibit 10.

other perceived discrepancies, such as the financial discrepancies detailed above, have alternate explanations, without the needed follow-up to ascertain whether these discrepancies have a logical explanation, this evidence on the record cannot outweigh the rest of the record that points to Kingtom's having sufficient production capacity and capability to produce aluminum extrusions in the quantities and sizes that it claims to have produced.  Although AEFTC argues that the discrepancies undermine the reliability of the documents produced by Kingtom and the Importers,[28] as discussed above, explanations exist for such discrepancies which would have been evident if the discrepancies were followed up on during the course of the investigation.  Further, AEFTC does not suggest, nor does the record show, that other evidence on the record casts doubt on the reliability of the information in the financial documents.

Furthermore, although at the time of the separate visits by the alleger's experts and U.S. Government officials, they observed minimal production at Kingtom, Kingtom's production records corroborate that not all of the aluminum extrusion presses were operating at full capacity when those separate site visits took place.[29]  The first visit by one of the alleger's experts took place prior to the first month for which Kingtom provided records.  Thus, we cannot compare those observations to Kingtom's production records for the same time frame.  We also note that neither of the alleger's experts provided exact dates of their visits to Kingtom, so it is not possible to compare exact times of visits to the production records that are in the record.  Only the months and years of visits were provided, rather than specific days and times, and the production records support that Kingtom was not operating at full capacity in those months.  Importantly, however, this does not mean that the aluminum extrusion presses did not operate at higher capacities on other days or at other times on the days of those visits; indeed, the production records show greater operation at different times of day.[30]  For example, the production records show that not all shifts operated all presses at the same time on a daily basis and that some of the presses would not run for certain shifts for multiple days in a row.[31]  This would explain why the alleger's experts did not see all of the presses running during their visits.  As discussed above, the record demonstrates that Kingtom produced custom aluminum extrusions to order and did not keep a steady stream of production for inventory purposes.[32]  These fluctuations in production are expected when the goods are produced to order, as Kingtom's submissions demonstrate.  The production records show these fluctuations and that Kingtom's production increased over time as it received more orders to fill.[33]

Additionally, while the Importers and Kingtom provided several photographs and/or videos documenting production,[34] only one photograph accompanies one of the alleger's expert's declarations[35] and CBP's Attaché Report is not accompanied by any visual evidence to support the written observations made therein.  Those separate site visits by the alleger's

---

[28] See AEFTC's Written Comments on Draft Remand Redetermination, pages 4-5.
[29] See Kingtom's RFI Response Exhibit 21.
[30] See id.
[31] See id.
[32] See Kingtom RFI Response, page 9.
[33] See Kingtom RFI Response Exhibit 21.
[34] See, e.g., Kingtom's RFI Response Exhibits 3 and 30.  See also, e.g., Global Aluminum's Voluntary Submission Exhibit N.
[35] See Allegation Exhibit 3, Attachment 2.

experts and CBP only cover short snapshots of the production that occurred at Kingtom. Furthermore, the Attaché Report does not opine about Kingtom's production capabilities or capacity. As such, only AEFTC's experts have opined on Kingtom's production capacity and capability but did not provide a more fulsome analysis to support those conclusions. As mentioned earlier, only one of the experts provided a rough calculation for the smallest aluminum extrusion press in his declaration while also noting the presence of two (2) larger extrusion presses. On remand, we determine that TRLED and R&R improperly relied on the extent of production observed during these short site visits that took place months apart to extrapolate Kingtom's monthly production capacity, while not affording any weight to the more complete production information submitted by Kingtom. Upon further review, we find that such isolated observations cannot comprise the entirety of evidence needed to justify a finding of a lack of production that would demonstrate evasion. In light of the evidence provided by Kingtom, to support a conclusion of insufficient production/production capacity, the administrative record needs to contain greater evidence than declarations opining on overall production capacity after only minimal visits to the manufacturer.

We also note that, per Exhibit 9 to AEFTC's allegation, Kingtom reached out to that company, a member of AEFTC and a direct competitor, in 2019 to request a visit to Kingtom's facility.[36] Then, several months after this visit, AEFTC filed an EAPA allegation against the Importers asserting transshipment using that site visit, as well as two earlier visits by another company, to support the allegation. Both declarations included with the allegation provide details of visits that occurred months before the dates on those declarations.[37] There is no indication that these affidavits were based upon notes taken by the experts closer to or during the time of the visits. The Importers and Kingtom have provided explanations for the perceived discrepancies and submitted thousands of pages regarding the running of Kingtom and its manufacturing capabilities. These submissions and explanations contradict the opinions found within the alleger's experts' declarations in showing how Kingtom operated and was able to produce aluminum extrusions in the size and quantities it imported into the United States by providing physical evidence of these capabilities. The alleger's experts do not appear to have spent a meaningful amount of time actively engaged in analyzing Kingtom's production capacity and capability to find credible inconsistencies and discrepancies that could point to transshipment or a different evasion method. Kingtom has provided maximum figures for its production capabilities and capacity, as well as production records that do not exceed those maximums.[38] There is nothing in the record that contradicts the figures provided by Kingtom.

The record does indicate that Kingtom has some ties to China—*e.g.*, its ownership, nationality of some of its employees, and its sourcing of some equipment and supplies. However, the record does not support a finding that these ties somehow negate the evidence of production in the Dominican Republic to support a conclusion that the aluminum extrusions were not produced at Kingtom's manufacturing facility in the Dominican Republic, but rather, were transshipped from China.

---

[36] *See* Allegation Exhibit 9.
[37] *See* Allegation Exhibits 3 and 9.
[38] *See* Kingtom's RFI Response Exhibit 21. *See also* Kingtom's Supplemental RFI Response, pages 34-35, and Kingtom's Supplemental RFI Response Exhibit S-15.

Furthermore, nothing in the record indicates that any aluminum ingots or scrap were supplied by Chinese companies;[39] rather, the record shows that ingots and scrap were sourced from other countries.[40]  Kingtom provided documentation to show the countries from which it sources the main raw materials, aluminum ingot and aluminum scrap, needed to make the aluminum extrusions, during the course of the investigation for EAPA Cons. Case No. 7348.  The record also shows that Kingtom collected the aluminum scrap by-product created from the production process and used this in later aluminum extrusion order production.[41]  This would lower the amount of aluminum scrap that Kingtom would need to purchase and explain the discrepancy between raw materials purchased and raw materials used.

Although, as AEFTC states in its Comments on Draft Remand Redetermination, there were discrepancies in Kingtom's lists of suppliers and the materials supplied by them,[42] the record indicates that such discrepancies were not followed up on during the investigation.  For example, the TRLED January 28 Determination notes that monetary transactions were not provided for all of the suppliers listed by Kingtom in its RFI Response;[43] however, the record demonstrates that a revised supplier list was provided by the Importers which also noted if Kingtom did not have any transactions with a specific supplier during the period of investigation for EAPA Cons. Case No. 7423.[44]  This is supported by a review of the transactions and bank statements provided by Kingtom during EAPA Cons. Case No. 7348.[45]  Further, while the TRLED January 28 Determination indicates that sufficient information was not provided by Kingtom in order to ascertain specific descriptions of the supplies provided by individual raw material suppliers,[46] the record does not show that any follow-up to garner more specificity was made when TRLED issued the Supplemental RFI to Kingtom as part of the investigation in EAPA Cons. Case No. 7348, nor did TRLED issue any RFI to Kingtom during this EAPA investigation to provide an opportunity to Kingtom to explain possible discrepancies.

---

[39] To the extent that the TRLED January 28 Determination finds that Kingtom failed to adequately explain what certain suppliers provided to Kingtom, we note that the Supplemental RFI to Kingtom in EAPA Cons. Case No. 7348 did not request more specific information about those suppliers, despite asking for other additional information about those same suppliers as a follow-up question.  *See* Kingtom's Supplemental RFI Response, pages 21-23.  Further, no RFI was issued to Kingtom during the course of the investigation for EAPA Cons. Case No. 7423; rather, TRLED simply added Kingtom's RFI and Supplemental RFI Responses from EAPA Cons. Case No. 7348 to the administrative record in the instant EAPA case.  *See* TRLED January 28 Determination, page 6, n. 33.  Additionally, TRLED did not issue any RFI to Global Aluminum or Florida Aluminum Extrusion, LLC during the course of the instant EAPA investigation, opting instead to add their RFI and Supplemental RFI Responses from EAPA Cons. Case No. 7348 to the administrative record.

[40] *See* Kingtom's RFI Response Exhibit 16.  *See also* Kingtom Supplemental RFI Response Exhibits S-1 and S-16.

[41] *See* Kingtom RFI Response Exhibit 32.

[42] *See* AEFTC's Comments on Draft Remand Redetermination, pages 5-6.

[43] *See* TRLED January 28 Determination, page 7.

[44] *See* Importers' Joint Submission of Rebuttal Information Exhibit 1.

[45] *See* Kingtom RFI Response Exhibit 10.  To the extent transactions only occurred during the POI for EAPA Cons. Case No. 7423, because updated information was not requested of Kingtom during the investigation, that information cannot be verified.  However, the transactions that overlap between EAPA Cons. Case Nos. 7348 and 7423 can and have been verified.

[46] *See* TRLED January 28 Determination, page 7.

AEFTC's arguments that the discrepancies noted by the TRLED January 28 Determination and R&R June 4 FAD, coupled with Kingtom's ties to China, amount to substantial evidence of evasion are unavailing.  As explained above, many of the discrepancies upon which the TRLED January 28 Determination and the R&R June 4 FAD relied have logical explanations that should have received more consideration during the original *de novo* review process.  The administrative record does not indicate that Kingtom would have needed to operate at maximum capacity in order to produce the amount of aluminum extrusions exported to the United States and there is no dispute that Kingtom had the ability to produce aluminum extrusions.  The main raw materials used to make the aluminum extrusions did not come from China.  Many of the perceived discrepancies have logical explanations which were not sought during the investigation.  Absent a lack of cooperation by the parties or manufacturer during the course of the investigation that warrants the application of adverse inferences, we cannot infer that evasion has occurred based upon the administrative record in front of us.  Failure to provide information that was not requested by CBP during the investigation is not a lack of cooperation.  At the same time, the decision to open a manufacturing facility in another country to avoid antidumping and/or countervailing duties on such items coming from China, in and of itself, is not enough to establish transshipment to find substantial evidence of evasion.  Without any other evidence that would draw the credibility of Kingtom's production documentation into question, we cannot disregard the provided explanations for certain discrepancies, nor can we assume that any other perceived discrepancies lack a logical explanation.

Finally, the final administrative review process is a *de novo* review.  Under 19 U.S.C. § 1517(f), R&R is required to review the record without deference to the TRLED January 28 Determination, and determine whether there is substantial evidence of evasion.  In this case, the lack of proper follow-up during the investigation regarding possible discrepancies has made it difficult to determine whether any actual discrepancies exist and/or which claimed discrepancies may have logical explanations.  Moreover, certain key alleged discrepancies have indeed been explained and shown not to be discrepancies.  Thus, RR is not able to conclude that any additional cited perceived discrepancies call the reliability of Kingtom's documentation into question.

Altogether, in the absence of contradictory evidence, we find the documentation demonstrating production capability and capacity provided by Kingtom to be credible, and that the administrative record does not contain a strong enough connection between covered merchandise from China and Kingtom to support a finding of substantial evidence of evasion.  Thus, after further review, we find that, in EAPA Consolidated Case Number 7423, the administrative record does not contain substantial evidence that evasion occurred.

Based upon the documentation and information provided in the administrative record, we find that there is not substantial evidence to support a finding of evasion as to the Importers.

Based upon our remand *de novo* review of the administrative record in this case, the R&R June 4 FAD and TRLED January 28 Determination of evasion under 19 U.S.C. § 1517(c) are REVERSED.

Sincerely,



Paul Pizzeck
Chief, Penalties Branch, Regulations and Rulings
Office of Trade
U.S. Customs and Border Protection


Approved by:

Alice A. Kipel
Executive Director, Regulations and Rulings
Office of Trade
U.S. Customs and Border Protection