**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**H&E HOME, INC. *et al.*,**

**Plaintiffs and Consolidated Plaintiffs,**

**and**

**KINGTOM ALUMINIO S.R.L.,**

**Plaintiff-Intervenor,**

**v.**

**UNITED STATES,**

**Defendant,**

**and**

**THE ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**

**Defendant-Intervenor.**

**Before: Hon. Richard K. Eaton, Judge**

**Consol. Court No. 21-00337**

**ORDER**

Upon consideration of Defendant-Intervenor Aluminum Extrusions Fair Trade Committee's ("AEFTC's") Rule 56.2 Motion for Judgment on the Agency Record and the accompanying comments in opposition to the remand redetermination, and upon all other papers filed and proceedings had herein, it is hereby

**ORDERED** that AEFTC's motion is granted; and it is further

**ORDERED** that the remand redetermination issued by U.S. Customs and Border Protection ("CBP") in EAPA Consolidated Case No. 7423 is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; and it is further

**ORDERED** that this action is remanded to CBP for proceedings consistent with this Court's opinion.

Dated: ______________________
New York, New York

______________________________
Hon. Richard K. Eaton, Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**H&E HOME, INC. *et al.*,**

**Plaintiffs and Consolidated Plaintiffs,**

**and**

**KINGTOM ALUMINIO S.R.L.,**

**Plaintiff-Intervenor,**

**v.**

**UNITED STATES,**

**Defendant,**

**and**

**THE ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**

**Defendant-Intervenor.**

**Before: Hon. Richard K. Eaton, Judge**

**Consol. Court No. 21-00337**

**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade ("CIT"), Defendant-Intervenor Aluminum Extrusions Fair Trade Committee ("AEFTC"), by and through its attorneys, respectfully moves for judgment on the agency record with respect to the remand redetermination issued by U.S. Customs and Border Protection ("CBP") in EAPA Consolidated Case No. 7423, with respect to the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China. Remand Redetermination, H&E Home, Inc. and Classic Metal Suppliers, et. al v. United States, Court No. 21-00337 (Court of International Trade Jan. 4, 2023), EAPA Cons. Case No. 7423 (Jan. 10, 2023), ECF No. 73 ("Remand").

AEFTC respectfully moves, for the reasons explained in the accompanying comments in opposition to the remand redetermination, that this Court find that CBP's remand redetermination was arbitrary, capricious, and an abuse of discretion. AEFTC further moves that the Court remand this determination to CBP for disposition consistent with the Court's opinion in this matter.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Aluminum Extrusions Fair Trade Committee*

Dated: April 25, 2023

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**H&E HOME, INC. *et al.*,**

**Plaintiffs and Consolidated Plaintiffs,**

**and**

**KINGTOM ALUMINIO S.R.L.,**

**Plaintiff-Intervenor,**

**v.**

**UNITED STATES,**

**Defendant,**

**and**

**THE ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**

**Defendant-Intervenor.**

**Before: Hon. Richard K. Eaton, Judge**

**Consol. Court No. 21-00337**

**NON-CONFIDENTIAL VERSION**

**Business Proprietary Information Removed from Pages: 11-12, 15-18, 24-29**

# ALUMINUM EXTRUSION FAIR TRADE COMMITTEE'S COMMENTS IN OPPOSITION TO THE REMAND REDETERMINATION

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for the Aluminum Extrusions Fair Trade Committee*

Dated: April 25, 2023

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

III. ISSUES PRESENTED AND SUMMARY OF ARGUMENTS ..... 2

IV. STANDARD OF REVIEW ..... 4

V. STATEMENT OF RELEVANT FACTS ..... 6

VI. ARGUMENT ..... 14

A. Regulations and Rulings Reversed the Initial Determination of Evasion Based on the Same Evidence that it Previously Found to Support Evasion ..... 14

1. Regulations and Rulings Relied on the Same Evidence to Reach Opposite Conclusions about Kingtom's Production Activity ..... 16

2. Regulations and Rulings Relied on the Same Ties to China to Reach the Opposite Conclusion ..... 19

3. Conclusion ..... 20

B. Regulations and Rulings' New Determination That There is Not Substantial Evidence of Evasion is Erroneous ..... 20

1. Regulations and Rulings is Incorrect that the Widespread Discrepancies in Kingtom's Records Do Not Provide Substantial Evidence of Evasion ..... 21

2. Regulations and Rulings' Factual Findings Are Unsupported by the Record ..... 23

C. CBP Acted Arbitrarily in Not Applying Adverse Inferences Against Parties that Refused to Provide Requested Information ..... 30

VII. CONCLUSION ..... 34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Aircraft Indus., Inc. v. United States*,
586 F.3d 1372 (Fed. Cir. 2009)....5

*Altx, Inc. v. United States*,
370 F.3d 1108 (Fed. Cir. 2004)....7, 22

*Diamond Tools Tech. LLC v. United States*,
609 F.Supp.3d 1378 (Ct. Int'l Trade 2022)....6

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)....5

*Royal Brush Mfg., Inc. v. United States*,
483 F.Supp.3d 1294 (Ct. Int'l Trade 2020)....31

*Royal Brush Mfg., Inc. v. United States*,
545 F.Supp.3d 1357 (Ct. Int'l Trade 2021)....31

*SKF USA Inc. v. United States*,
263 F.3d 1369 (Fed. Cir. 2001)....5

*Star Fruits S.N.C. v. United States*,
393 F.3d 1277 (Fed. Cir. 2005)....6

*Wheatland Tube Co. v. United States*,
161 F.3d 1365 (Fed. Cir. 1998)....5

**Statutes**

19 U.S.C. § 1517(a)(5)....7

19 U.S.C. § 1517(c)....7

19 U.S.C. § 1517(c)(3)....22

19 U.S.C. § 1517(c)(3)(A)....30

19 U.S.C. § 1517(c)(3)(C)....30

19 U.S.C. § 1517(f)....8

19 U.S.C. § 1517(g)....5

Trade Facilitation and Trade Enforcement Act of 2015 Title IV, Section 421 ..............................6

Trade Facilitation and Trade Enforcement Act of 2015 Title IV, Section 411 ..............................6

**Regulations**

19 C.F.R. § 165.1 ..............................6

19 C.F.R. § 165.5(a)..............................17

19 C.F.R. § 165.41 ..............................8

**Administrative Materials**

*Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) ..............................6, 15

*Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) ..............................6, 7, 15

Letter from Trade Remedy & Law Enforcement Directorate, CBP Office of Trade, re: *Notice of Initiation of Investigation and Interim Measures – EAPA Cons. Case 7348* (Feb. 5, 2020) ..............................8

Letter from Trade Remedy Law Enforcement Directorate, CBP Office of Trade, re: *Notice of Determination as to Evasion* (Nov. 2, 2020) ..............................8, 20

Letter from Trade Remedy Law Enforcement Directorate, CBP Office of Trade, re: *Notice of Initiation of Investigation and Interim Measures – EAPA Case 7550* (May 10, 2021) ..............................9

Letter from Regulations & Rulings, Office of Trade, U.S. Customs & Border Protection, re: *Enforce and Protect Act ("EAPA") Consolidated Case Number 7348; Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 FR 30650 (May 26, 2011) and Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order, 76 FR 30653 (May 26, 2011); Florida Aluminum Extrusion, LLC; Global Aluminum Distributor, LLC; Hialeah Aluminum Supply, Inc.; 19 U.S.C. § 1517* (Mar. 18, 2021) ..............................8, 9

Letter from Trade Remedy Law Enforcement Directorate, CBP Office of Trade, re: *Notice of Determination as to Evasion* (Feb. 4, 2022) (Feb. 4, 2022)..............................9, 10

Letter from Regulations and Rulings, Office of Trade, U.S. Customs and Border Protection, re: *Enforce and Protect Act ("EAPA") Case Number 7550; Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 FR 30650 (May 26, 2011) and Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order, 76 FR 30653 (May 26, 2011); Kingtom Aluminio SRL; 19 U.S.C. § 1517* (June 29, 2022)..................................10

## I.    INTRODUCTION

On behalf of Defendant-Intervenor the Aluminum Extrusions Fair Trade Committee ("AEFTC"), we respectfully submit the following comments in opposition to U.S. Customs and Border Protection's ("CBP" or "Customs") remand redetermination. *See* Remand Redetermination, *H&E Home, Inc. and Classic Metal Suppliers, et. al v. United States*, Court No. 21-00337 (Court of International Trade Jan. 4, 2023), EAPA Cons. Case No. 7423 (Jan. 10, 2023), ECF No. 73 ("Remand").

## II.   BACKGROUND

This action arises out of a determination of evasion made by CBP, Office of Trade ("OT"), Trade Remedy Law Enforcement Directorate ("TRLED") pursuant to 19 U.S.C. § 1517(c) in a consolidated Enforce and Protect Act ("EAPA") investigation into imports of aluminum extrusions made by H&E Home Inc. ("H&E"), Classic Metals Suppliers ("Classic"), Global Aluminum Distributor, LLC ("Global"), Industrias Feliciano Aluminum Inc. ("Industrias"), JL Trading Corp. ("JL"), and Puertas y Ventanas J.M., Inc. ("Puertas") (collectively, the "Importers") from Kingtom Aluminio SRL ("Kingtom") in the Dominican Republic ("D.R."), with respect to the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China ("China"), EAPA Consolidated Case Number 7423, which was affirmed by CBP, OT, Regulations and Rulings ("R&R") in a *de novo* administrative view pursuant to 19 U.S.C. § 1517(f). *See* Remand at 1-4; Letter from Brian M. Hoxie, Director, Enf't Operations Division, Trade Remedy Law Enforcement Directorate, CBP Office of Trade, re: *Notice of Determination as to Evasion* (Jan. 28, 2021) ("TRLED Determination"), C.R. 824, P.R. 684; Letter from Paul Pizzeck, Chief, Penalties Branch, Regulations & Rulings, Office of Trade, U.S. Customs & Border Protection, re: *Enforce and*

*Protect Act ("EAPA") Consolidated Case Number 7423; Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 FR 30650 (May 26, 2011) and Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order, 76 FR 30653 (May 26, 2011); Florida Aluminum Extrusion, LLC; Global Aluminum Distributor, LLC; Classic Metals Suppliers; Industrias Feliciano Aluminum, Inc.; JL Trading Corp.; Puertas y Ventantas, J.M., Inc.; H&E Home; 19 U.S.C. § 1517* (June 4, 2021) ("R&R Determination"), P.R. 712.[1] These determinations were not published in the Federal Register.

## III. ISSUES PRESENTED AND SUMMARY OF ARGUMENTS

### A. Whether Regulations and Rulings' Reversal of the Initial Determination of Evasion Based on the Same Evidence that it Previously Found to Support Evasion Is Arbitrary, Capricious, and An Abuse of Discretion?

Yes. R&R relied on most, if not all, of the same evidence that it initially found to support a finding of evasion to reach the opposite conclusion. First, R&R relied on the same evidence that it initially found to indicate both that Kingtom had minimal production activity and that Kingtom's production records are unreliable to conclude in the remand that Kingtom's production records are reliable and that Kingtom produced the claimed aluminum extrusions. Second, while R&R initially found Kingtom's ties to China, including the circumstances of Kingtom's establishment in the D.R., Kingtom's ownership, nationality of employees, and sourcing of equipment and supplies, to support a finding of evasion, in the remand R&R decided that the same ties to China do not demonstrate evasion. But R&R failed to provide sufficient justification for treating the same evidence differently. R&R summarily decided that the same

---

[1] "P.R." denotes the document number identified in the Public Version and Public Document Index for the administrative record filed in this action on Jan. 25, 2022, ECF No. 54. "C.R." denotes the document number identified in the Business Confidential Index for the administrative record filed in this action on January 25, 2022, ECF No. 53. "P.R.R." denotes the document number identified in the Public Document Index for the remand administrative record filed in this action on January 25, 2023, ECF No. 77.

evidence does not demonstrate evasion, without providing a rational explanation, or made findings that are unreasonable and unsupported by the record. R&R failed to consider the facts and its own prior findings directly contradicting its new position.

**B. Whether Regulations and Rulings' New Determination that There is Not Substantial Evidence of Evasion is Erroneous?**

Yes. R&R incorrectly reverses itself to conclude that the discrepancies in Kingtom's records do not provide substantial evidence of evasion. These were not minor clerical deficiencies but rather, widespread discrepancies involving issues directly relevant to evaluating Kingtom's production capability and actual production – the heart of the issue in this case – such as production activity, suppliers and input purchases, raw materials, financial transactions, size capabilities. These discrepancies meant that there was no reliable evidence that Kingtom produced the claimed extrusions and constituted substantial evidence that Kingtom did not actually produce the claimed extrusions, as R&R initially found. TRLED initiated the investigation because there was evidence that Kingtom could not have produced all the aluminum extrusions entered into the United States. The Importers' defense was that Kingtom did produce all the extrusions but failed to support this claim. CBP was not obligated to affirmatively determine that Kingtom used Chinese extrusions; rather it was Kingtom's burden to prove that it did not supplement its production with Chinese extrusions, which it was unable to do because of the numerous gaps in the record.

R&R failed to grapple with the record evidence and made an unreasonable judgment in weighing the relevant factors, and its decision is arbitrary, capricious, and an abuse of discretion. In addition, in dismissing these discrepancies, R&R makes factual findings that are contradicted by the record, and it erroneously filled the gap by drawing conclusions where the evidence does not support these conclusions. R&R incorrectly concluded that certain discrepancies were not

discrepancies, or it did not actually analyze the issue. This also renders R&R's remand arbitrary, capricious, and an abuse of discretion.

### C. Whether CBP Acted Arbitrarily in Not Applying Adverse Inferences Against Parties That Refused to Provide Requested Information?

Yes. In conducting its remand proceeding, CBP required all parties to submit revised public versions of their submissions made in the investigation that contained confidential information to include public summaries with sufficient detail to permit a reasonable understanding of the substance of the bracketed information, to comply with the agency's regulations at 19 C.F.R. § 165.4(a)(2). The underlying investigation was conducted before CBP had fully imposed its revised practice with respect to public summaries to comply with certain holdings of this Court. TRLED rejected certain parties' submissions because they failed to include public summaries that satisfied the requirements of 19 C.F.R. § 165.4(a)(2) and provided them with an opportunity to correct the deficiencies. These parties refused to submit corrected public versions, despite multiple opportunities. Despite this clear failure to cooperate, CBP did not apply adverse inferences against these parties. CBP's refusal to do so, while requiring the other parties to expend the resources to submit the requested documents, was arbitrary, capricious, and an abuse of discretion.

## IV. STANDARD OF REVIEW

19 U.S.C. § 1517(g)(2) states that in determining whether a determination of evasion under 19 U.S.C. § 1517(c) or administrative review under 19 U.S.C. § 1517(f) of the determination of evasion is conducted in accordance with those subsections, the Court shall examine (1) whether Customs fully complied with all procedures under 19 U.S.C. § 1517(c) and (f) and (2) whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 19 U.S.C. § 1517(g).

The statute does not define arbitrary and capricious. The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has stated that "{c}ourts have found an agency's decision to be arbitrary and capricious when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167-68, 83 S. Ct. 239, 245, 9 L.Ed.2d 207 (1962)). While "{t}he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency," the agency must have "examine{d} the relevant data and articulate{d} a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. at 168). In addition, "{a}n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).

The Federal Circuit has also explained that "{a}n abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant

 factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (citing *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004)).

The Court also reviews the remand results "for compliance with the court's remand order." *See Diamond Tools Tech. LLC v. United States*, 609 F.Supp.3d 1378 (Ct. Int'l Trade 2022) (citing *Beijing Tianhai Indus. Co. v. United States*, 106 F.Supp.3d 1342, 1346 (Ct. Int'l Trade 2015)).

## V.    STATEMENT OF RELEVANT FACTS

On May 26, 2011, U.S. Department of Commerce issued the antidumping ("AD") and countervailing duty ("CVD") orders on aluminum extrusions from the People's Republic of China (the "Orders"). *Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,650 (Dep't Commerce May 26, 2011) (antidumping duty order) ("AD Order"); *Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (countervailing duty order) ("CVD Order").

The Enforce and Protect Act, Title IV, Section 421 of the Trade Facilitation and Trade Enforcement Act of 2015 was signed into law on February 24, 2016, to amend the Tariff Act of 1930 to add procedures for CBP to investigate claims of evasion of AD/CVD orders.  Trade Facilitation and Trade Enforcement Act of 2015 ("TFTEA"), Title IV, Section 421, codified at 19 U.S.C. § 1517 ("EAPA").  Congress expanded CBP's ability to investigate evasion and protect U.S. Government revenue.  The TFTEA mandated the creation of a Trade Remedy Law Enforcement Division within the OT, dedicated to the development and administration of policies to prevent and counter evasion, including policies related to the implementation of EAPA, among other responsibilities.  Title IV, Section 411 of the TFTEA; *see also* 19 C.F.R. § 165.1 (explaining that "TRLED" refers to "the Trade Remedy Law Enforcement Directorate,

Office of Trade, that conducts the investigation of alleged evasion under {19 C.F.R. §165}, and that was established as required by section 411 of the EAPA.").

EAPA directs CBP to decide, based on "substantial evidence," whether merchandise covered by an AD/CVD order ("covered merchandise") was entered into the customs territory of the United States through evasion. 19 U.S.C. § 1517(c). "Evasion" is defined as "entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable {AD} or {CVD} duties being reduced or not applied with respect to the merchandise." 19 U.S.C. § 1517(a)(5). "Substantial evidence" is not defined in the statute. However, CBP has relied on Federal Circuit case law finding that "substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." TRLED Determination at 5 n.23 (citing *A.L. Patterson, Inc. v. United States*, 585 Fed. App'x 778, 781-82 (Fed. Cir. 2014) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); R&R Determination at 4 (citing *A.L. Patterson, Inc. v*, 585 Fed. App'x at 781-82 (quoting *Consol. Edison Co. of N.Y.*, 305 U.S. at 229). Substantial evidence is "more than a mere scintilla," but "less than the weight of the evidence." *Altx, Inc. v. United States*, 370 F.3d 1108,1116 (Fed. Cir. 2004).

Following a determination of evasion, the statute provides for an administrative review process by which CBP will conduct a *de novo* review of the determination if requested by the interested party that filed the allegation that resulted in the initiation of the investigation, or the interested party determined to have entered the covered merchandise through evasion.

19 U.S.C. § 1517(f).   CBP's implementing regulations of EAPA tasked R&R with the responsibility of conducting the administrative review.  *See* 19 C.F.R. § 165.41.

In addition to the underlying investigation, there were two EAPA investigations involving imports of extrusions from Kingtom Aluminio SRL ("Kingtom") in the D.R.  First, prior to this investigation, on February 5, 2020, TRLED published notice of its initiation of an EAPA investigation against Global Aluminum Distributor, LLC ("Global"); Florida Aluminum Extrusion, LLC ("Florida"); and Hialeah Aluminum Supply, Inc. ("Hialeah"), with respect to their imports of extrusions from Kingtom.  Letter from Trade Remedy & Law Enforcement Directorate, CBP Office of Trade, re: *Notice of Initiation of Investigation and Interim Measures – EAPA Cons. Case 7348* (Feb. 5, 2020) ("EAPA 7348 NOI"), C.R. 850, P.R. 740 at 1.  The allegation was filed by Ta Chen International Inc. ("Ta Chen"), an importer of Chinese extrusions.  *Id.* at 2.  On November 2, 2020, TRLED published its final determination, finding substantial evidence that the investigated importers imported Chinese-origin extrusions that were transshipped through the D.R.  Letter from Trade Remedy Law Enforcement Directorate, CBP Office of Trade, re: *Notice of Determination as to Evasion* (Nov. 2, 2020) ("EAPA 7348 TRLED Determination"), C.R. 809, P.R. 673 at 1.  R&R affirmed this determination in full on March 18, 2021.  Letter from Regulations & Rulings, Office of Trade, U.S. Customs & Border Protection, re: *Enforce and Protect Act ("EAPA") Consolidated Case Number 7348; Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 FR 30650 (May 26, 2011) and Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order, 76 FR 30653 (May 26, 2011); Florida Aluminum Extrusion, LLC; Global Aluminum Distributor, LLC; Hialeah Aluminum Supply, Inc.; 19 U.S.C. § 1517* (Mar. 18, 2021) ("EAPA 7348 R&R Determination") at 13, *available at* https://www.cbp.gov/document/publications/eapa-case-7348-

global-aluminum-distributor-llc-florida-aluminum-extrusion-0. The period of investigation ("POI") for EAPA 7348 was October 9, 2018 through November 2, 2020. *Id.* at 4.

In April 2022, in a consolidated action in this Court instituted by Global and Hialeah to challenge the determination in EAPA 7348, the U.S. Department of Justice ("Government") filed a motion for a voluntary remand for CBP to reconsider the decision, which the Court granted. Memorandum and Order, *Global Aluminum Distributor LLC et al. v. United States*, Consol. Court No. 21-00198 (Ct. Int'l Trade Aug. 8, 2022), ECF No. 102 at 5.[2] In response, CBP reversed the initial finding and filed its remand with the Court in June 2022. *Id.* No party contested the draft remand before the agency or the final remand before the Court, and this Court sustained the remand on August 8, 2022. *Id.* at 5-6.

Second, following this investigation, on May 10, 2021, TRLED published its notice of initiation of an EAPA investigation against Kingtom as the importer. Letter from Trade Remedy Law Enforcement Directorate, CBP Office of Trade, re: *Notice of Initiation of Investigation and Interim Measures – EAPA Case 7550* (May 10, 2021) ("EAPA 7550 NOI") at 1, *available at* https://www.cbp.gov/sites/default/files/assets/documents/2021-May/05-10-2021%20-%20TRLED-Notice%20of%20Initiation%20and%20Interim%20Measures%20%28508%20compliant%29%20%287550%29%20-%20PV_0.pdf. On February 4, 2022, TRLED published its final determination, finding substantial evidence that Kingtom imported Chinese-origin extrusions that were commingled or transshipped through the D.R. Letter from Trade Remedy Law Enforcement Directorate, CBP Office of Trade, re: *Notice of Determination as to Evasion* (Feb. 4, 2022) ("EAPA 7550 TRLED Determination") at 1, *available at*

[2] AEFTC was not a party to this action and could not participate.

https://www.cbp.gov/document/publications/eapa-case-7550-kingtom-aluminio-srl-notice-determination-evasion-february-5. R&R reversed this determination on June 9, 2022.[3] Letter from Regulations and Rulings, Office of Trade, U.S. Customs and Border Protection, re: *Enforce and Protect Act ("EAPA") Case Number 7550; Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 FR 30650 (May 26, 2011) and Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order, 76 FR 30653 (May 26, 2011); Kingtom Aluminio SRL; 19 U.S.C. § 1517* (June 29, 2022) at 11, *available at* https://www.cbp.gov/document/publications/eapa-case-7550-kingtom-aluminio-srl-final-administrative-decision-june-29. The POI for EAPA 7550 was January 8, 2020 through February 4, 2022. *Id.* at 4.

On January 27, 2020, TRLED initiated this investigation against Classic Metals Suppliers ("Classic"); Industrias Feliciano Aluminum, Inc. ("Industrias"); Global; Florida; H&E Home ("H&E"); JL Trading Corp. ("JL"); and Puertas y Ventanas J.M., Inc. ("Puertas") for their imports of extrusions from Kingtom, in response to an allegation by AEFTC. EAPA 7423 NOI, C.R. 58, P.R. 59 at 1.

AEFTC provided, among other evidence, the following information:

- Evidence indicating that Kingtom did not have the capability to produce the types of extrusions exported (size and finishing), *see* Allegation Narrative (Dec. 16, 2019), C.R. 1, P.R. 1, at 10-15; Allegation Exhibits (Dec. 16, 2019), C.R. 811, P.R. 676 at Exhibits 3, 9, or the capacity to produce the volume exported, based on the operating

[3] This proceeding is being challenged before this Court.

machinery Kingtom appeared to have during the relevant periods. *See* Allegation Narrative at 15-19, Allegation Exhibits at Exhibits 3, 9.

- Evidence indicating that the volume of Kingtom's exports of extrusions exceeded the volume that could have been produced during the relevant periods based on the quantity of billets that Kingtom could have produced from the volume of raw material imports (scrap aluminum and primary aluminum) into the D.R. during the relevant timeframe (assuming that all these imports were consumed by Kingtom). *See* Allegation Narrative at 19-22. Billets are produced in a cast house using primary aluminum and scrap and then extruded into profiles on an extrusion press. *Id.* at 19, Allegation Exhibits at Exhibit 3. Because there is no primary aluminum production in the D.R. and very little scrap aluminum, both must be imported. Allegation Narrative at 19, Allegation Exhibits at Exhibit 3.

- Evidence indicating that Chinese exports of extrusions to the D.R. had increased significantly since the time of Kingtom's establishment in the D.R., which did not align with the small size of the market for extrusions in the D.R. Allegation Narrative at 7-9, Allegation Exhibits at Exhibit 7.

- Evidence regarding Kingtom's pricing structure, which further indicated evasion. For instance, [


                                                                              ] Kingtom's prices are [

          ] percent lower than [

                                        ]. In addition, AEFTC provided a cost model analysis of products similar to those that Kingtom appeared to have sold, reflecting

what it would cost an extruder in the D.R. to produce those products, which suggested that Kingtom was selling at prices substantially lower than its costs. Having managed [                                                    ] it was not possible to produce and sell extrusions at Kingtom's prices, providing further evidence indicating that Kingtom was supplementing any production with transshipped Chinese product. Allegation Narrative at 22-23; Allegation Exhibits at Exhibit 3.

Throughout the investigation the Importers filed questionnaire responses and/or supplemental questionnaire responses. TRLED Determination at 3. For Florida and Global and claimed foreign manufacturer Kingtom, because these parties had filed questionnaire responses in EAPA 7348, CBP placed those responses on the record of this investigation because the investigations ran concurrently and to avoid issuing duplicative questionnaires.[4] *Id.* CBP advised these parties that it would be doing so, to no objection. *Id.* TRLED placed additional documents from EAPA 7348 on the record of this investigation, to which the Importers filed rebuttal information. *Id.* at 4. The parties also filed voluntary submissions of factual information and rebuttal submissions, as well as written arguments and response arguments. *Id.* at 3-4.

On January 28, 2021, TRLED issued a determination, finding substantial evidence that the Importers imported from Kingtom Chinese-origin extrusions that were commingled or transshipped through the D.R. *Id.* at 1. On March 12, 2021, the Importers each filed a request for administrative review of the initial determination, to which AEFTC responded on March 30, 2021. R&R Determination at 5. On June 4, 2021, R&R issued a *de novo* review determination, affirming TRLED's determination in full. *Id.* at 14.

---

[4]    TRLED issued supplemental questionnaires to Florida and Global in this investigation. TRLED Determination at 3.

The Importers (H&E and Classic; Global; and Industrias, JL, and Puertas) each challenged CBP's final determination, which were consolidated into the instant action.[5]  *See* Order (Aug. 3, 2021), ECF No. 15.  On October 13, 2021, Kingtom was granted the status of plaintiff-intervenor in this action.  Order (Oct. 13, 2021), ECF No. 33.  On August 5, 2022, prior to any party filing a Rule 56.2 motion for judgment, the United States filed a motion for a voluntary remand.  Def.'s Mot. for Voluntary Remand (Aug. 5, 2022), ECF No. 65.  The Importers and Kingtom consented to the relief requested, while AEFTC opposed the motion *See id.*  This Court granted the Government's motion on September 7, 2022.  Order (Sept. 7, 2022), ECF No. 70 ("Remand Order").

In the remand proceeding, TRLED requested that parties file revised public versions of the submissions made in the underlying investigation.  Remand at 7-11.  TRLED provided the parties with the opportunity to submit rebuttal factual information and written arguments regarding the revised public versions.  *Id.* at 11.  TRLED also transmitted to R&R record documents that were inadvertently omitted when the record was originally transferred to R&R for its administrative review.  R&R did not request any new information.  *Id.* at 13.  On December 2, 2022, CBP released a draft remand to the parties, with TRLED addressing procedural aspects of the remand and R&R addressing the evasion determination.  *Id.* at 20.  AEFTC, Industrias, JL, and Puertas filed comments on the draft remand.  Remand at 20.  CBP filed the final remand with this Court on January 10, 2023.  *See id.* at 1.

---

[5]      The underlying investigation also covered importer Florida.  However, Florida did not appeal and because Florida does not have any unliquidated entries that were subject to the investigation, CBP explained that its remand does not concern Florida.  *See* Remand at 1.

## VI. ARGUMENT

R&R's reversal of TRLED's determination of evasion and its own *de novo* administrative review determination affirming TRLED's decision is arbitrary, capricious, and an abuse of discretion. The agency relied on most, if not all, of the same evidence that it initially relied on to find evasion but reached the opposite conclusion without sufficient justification. The new determination that there is not substantial evidence of evasion is erroneous. R&R is incorrect that the widespread discrepancies in Kingtom's records cannot provide substantial evidence of evasion. And in dismissing such discrepancies, R&R made factual findings that are unsupported by the record. Lastly, CBP acted arbitrarily in not applying adverse inferences against parties that refused to provide requested information in the remand proceeding.

### A. Regulations and Rulings Reversed the Initial Determination of Evasion Based on the Same Evidence that it Previously Found to Support Evasion

R&R's remand is arbitrary, capricious, and an abuse of discretion because the agency relied on most, if not all, of the same evidence that it initially found to support a finding of evasion.[6] R&R failed to provide sufficient justification for treating the same evidence differently. The agency summarily decided that the same evidence does not demonstrate evasion, without providing a rational explanation, or made findings that are unreasonable and unsupported by the record.

In the underlying investigation, TRLED reviewed a massive record containing submissions by the seven investigated importers, Kingtom, and AEFTC. TRLED Determination at 2-5. TRLED found a large number of discrepancies on a wide range of critical issues that both undermined the reliability of Kingtom's submissions as a whole and indicated that Kingtom did

---

[6] While Regulations and Rulings identifies certain documents that were omitted from the record transmitted to it for its initial administrative review, it did not cite any of these documents in its analysis. Remand at Addendum, p. 2. n.2.

not actually manufacture in the D.R. all the extrusions exported to United States. TRLED found discrepancies with respect to Kingtom's production capacity and capabilities, supplier information, invoices, and payments. *Id.* at 17. TRLED reasonably concluded that "the record does not contain sufficient evidence to support the volume and type of extrusions actually produced by Kingtom in the D.R. during the POI." *Id.* TRLED then appropriately relied on record evidence of Kingtom's ties to China to find that extrusions imported from Kingtom include transshipped or commingled Chinese extrusions. *Id.* This evidence included the circumstances of Kingtom's establishment in the D.R.;[7] trade data showing increasing exports of Chinese extrusions to the D.R., which was not in line with the size of the market for extrusions in the D.R.;[8] Kingtom's employees' history with Chinese extruders;[9] Kingtom's strong ties to

[7] TRLED explained, for instance, that Kingtom officials [

]. TRLED reasoned that given that Chinese extrusions are subject to AD duties of up to 86.01 percent and CVD duties of up to 7.37 percent, Kingtom had sufficient reason to disguise the country of origin of its aluminum extrusions. TRLED Determination at 5-6.

[8] AEFTC provided data for HS codes 7604.21, 7604.29, and 7608.20, which are the six-digit codes covering HTS subheadings identified in the original orders. *See* Allegation Exhibits at Exhibit 7; AD Order at 30,651; CVD Order at 30,654. In other words, these codes likely cover a substantial volume of merchandise subject to the orders. The Importers provided D.R. import data for HTS numbers allegedly used by Kingtom and its customers and argued that Chinese imports into the free trade zones, where Kingtom is located, were minimal and that this demonstrates that no transshipment occurred. Importers' Written Arguments (Dec. 28, 2020), C.R. 821, P.R. 681 at 3-5; Importers' VFI Submission (Aug. 28, 2020), C.R. 391-406, P.R. 410-421 at Part III, Exhibit S-3. However, the Importers provided the data starting only in 2018, and did not provide data prior to that period. Importers' VFI Submission at Part III, Exhibit S-3. Also, the data does not account for merchandise that may have been classified under a different HTS number. Lastly, that Chinese-origin aluminum extrusions may have been imported into the D.R. outside of the free trade zones does not mean that Kingtom could not have obtained any such extrusions.

[9] TRLED found that Kingtom's Vice President of Production Director is a former employee of Minfa Aluminum ("Minfa") of 25 years and was previously Minfa's head engineer, that Minfa is a producer of aluminum extrusions in China, and that the relationship means that

Chinese companies and suppliers; and the lack of explanation as to what materials were sold by the [ ] suppliers to Kingtom. *Id.* TRLED's finding of evasion was supported by substantial evidence, as R&R initially agreed.

R&R agreed that the record did not support a finding that Kingtom produced all the extrusions exported to the United States during the POI. R&R Determination at 13. And given that the record does not provide enough evidence to support the Importers' claims of Kingtom's actual production in relation to the quantity of extrusions sold, R&R explained that the question of where the extrusions may have otherwise come from arises. *Id.* at 14. R&R agreed that Kingtom has strong ties to China, and that "when looking at the totality of the circumstances regarding evidence of Kingtom's actual production levels coupled with Kingtom's affiliations with China, a finding of evasion due to the commingling of Chinese-origin extrusions with D.R.-origin extrusions is supported by substantial evidence in the record." *Id.*

### 1. Regulations and Rulings Relied on the Same Evidence to Reach Opposite Conclusions about Kingtom's Production Activity

R&R initially relied on the following evidence to find that while the record might suggest that Kingtom had the ability to manufacture extrusions it exported, it does not demonstrate that Kingtom did manufacture in those quantities. *See* R&R Determination at 13-14.

R&R initially found information submitted by Kingtom and the U.S. Government to show that Kingtom had minimal production activity and also found various production-related documentation from Kingtom to call into question whether Kingtom actually produced according to the levels suggested in those documents – with some claiming that Kingtom had production that did not show up in other documents, some suggesting that equipment was used on

---

Minfa could be a potential supplier of transshipped Chinese aluminum extrusions. TRLED Determination at 7.

days/shifts for which other records indicated there was no such production, and some suggesting that some machines were used on dates before that machinery even went into operation.

- R&R found the facility photographs and videos from Kingtom to not indicate production levels that would match the volume of extrusions exported, noting that the videos (which were several minutes long) did not evidence a significant number of employees working different machines and showed some equipment sitting idle. R&R Determination at 13.
- R&R also noted that U.S. Government officials observed minimal production during their site visit. *Id.*[10]
- In addition, R&R found that Kingtom's daily production records corroborated that Kingtom's extrusion presses did not operate at anywhere near full capacity. *Id.* R&R found affidavits provided by certain importers with respect to site visits unreliable in assessing whether Kingtom manufactured the total volume exported. *Id.*
- R&R explained that Kingtom's mold information indicated the use of specific presses on dates preceding when Kingtom's equipment list stated that those presses went into operation. *Id.*
- R&R found that the mold information contained additional data that did not align with the production records, including work group numbers that did not appear on the

---

10 [ ]. Attache Report at 4. TRLED placed this report on the record of the investigation. CBP's regulations state that in obtaining information necessary to conduct EAPA proceedings, the agency "may employ any means authorized by law. In general, CBP will obtain information from its own files, from other agencies of the United States Government, through questionnaires and correspondence, and through field work by its officials." *See* 19 C.F.R. § 165.5(a).

production records and, at times, stating that the mold was used on days/shifts where the production records indicated that no such production occurred.  *Id.*

In the remand, R&R decided that this same evidence does not support evasion.  R&R found the U.S. Government report to be unreliable because it did not opine on Kingtom's production capabilities or capacity and was not accompanied by visual evidence.  Remand at 7.  But contrary to R&R's suggestion, the U.S. Government's report did not need visual evidence to be reliable.  And that this site visit was not done for the express purpose of analyzing Kingtom's production capacity and capabilities does not undermine the fact that even then minimal production was observed.  *See* R&R Determination at 13.  [

].  Attaché Report (Jan. 28, 2020), C.R. 14, P.R. 14 at 5.

R&R changed its mind and now broadly characterizes Kingtom's production records as complete and indicating that Kingtom had the capacity and capability to produce all the extrusions exported, citing daily production records, videos, and photographs, among other records.  *See* Remand at 4-8.  But R&R previously found Kingtom's records, including daily production records, videos, and photographs, to be unreliable or to show minimal production, as discussed above.

And R&R's conclusion in the remand that Kingtom's daily production records and documentation have not been shown to be unreliable is incorrect.[11]  *Id.* at 4, 5.  R&R itself found these very records to be unreliable.  As discussed above, R&R found that Kingtom's mold information indicated the use of specific presses on dates preceding when Kingtom's equipment

---

[11]      The daily production records that Regulations and Rulings references are [
] by Kingtom listing certain information.  Remand at 4; Kingtom RFI Response (Dec. 11, 2020), C.R. 682-769, P.R. 665-668 at 27, Exhibit 21.

list stated that those presses went into operation. R&R Determination at 13. R&R also found that the mold information contained data that did not align with the production records, including work group numbers that did not appear on the production records and, at times, stating that the mold was used on days/shifts where the production records indicated that no such production occurred. *Id.*

In sum, R&R took the evidence that it expressly relied on to find that Kingtom did not produce the extrusions exported and reached the opposite conclusion.

**2. Regulations and Rulings Relied on the Same Ties to China to Reach the Opposite Conclusion**

After having found that the record does not support the Importers' claims with respect to Kingtom's production, R&R initially relied on Kingtom's ties to China to find substantial evidence that extrusions from Kingtom included transshipped Chinese extrusions.

R&R noted that Kingtom is both owned by Chinese citizens and employs many Chinese citizens; has sourced both supplies and equipment from China; and was established and began operations around the same time that the D.R. established diplomatic ties with China. R&R Determination at 14. R&R found that the record does not indicate that Kingtom has any such ties to other countries not subject to AD/CVD orders or that Kingtom has ties to other extruders in the D.R. that could have supplied additional merchandise to cover the full amount exported. *Id.*

R&R now decides that there is not a strong enough connection between covered merchandise from China and Kingtom to support a finding of evasion. While acknowledging the same ties to China– *e.g.*, Kingtom's ownership, nationality of employees, and sourcing of equipment and supplies – R&R simply concludes that this not negate the evidence of production in the D.R. to support a conclusion that Kingtom's exports included transshipped Chinese

extrusions. Remand at 8. R&R wholly failed to provide sufficient justification for treating the same evidence differently.

**3. Conclusion**

R&R's reversal of the initial determination is based on much, if not all, of the same evidence that it initially relied on to find evasion. But the justification that the agency provided for reaching the opposite conclusion was unreasonable, unsupported by the record, and wholly inadequate. This type of fickle administrative decision-making is the very definition of arbitrary and capricious. That CBP previously found similar, and overlapping, evidence to demonstrate evasion in two other investigations involving Kingtom further renders the agency's change of mind arbitrary, capricious, and an abuse of discretion. *See* EAPA 7348 TRLED Determination; EAPA 7550 TRLED Determination.[12]

**B. Regulations and Rulings' New Determination That There is Not Substantial Evidence of Evasion is Erroneous**

R&R incorrectly reverses itself to conclude that the discrepancies in Kingtom's records do not provide substantial evidence of evasion. There were widespread discrepancies involving issues directly relevant to evaluating Kingtom's production capability and actual production – the heart of the issue in this case. These discrepancies meant that there was no reliable evidence that Kingtom produced the claimed extrusions and constituted substantial evidence in support of a finding of evasion. CBP was not required to affirmatively determine that Kingtom used Chinese extrusions. TRLED initiated the investigation having found evidence that indicated that extrusions from Kingtom included transshipped Chinese extrusions. The Importers failed to

[12] In EAPA 7348, CBP reversed the initial evasion finding. No party contested the draft remand before the agency or the final remand before the Court, and this Court sustained the remand on August 8, 2022. In EAPA 7550, Regulations and Rulings reversed TRLED's determination of evasion in an administrative review. That determination is being challenged in this Court.

support their defense that Kingtom did produce all the extrusions that they imported. R&R failed to grapple with the record evidence and made an unreasonable judgment in weighing the relevant factors, and its decision is arbitrary, capricious, and an abuse of discretion. R&R's factual findings in dismissing these discrepancies are unsupported by the record, and it erroneously filled the gap by drawing conclusions where the evidence does not support these conclusions. This also renders R&R's remand arbitrary, capricious, and an abuse of discretion.

**1. Regulations and Rulings is Incorrect that the Widespread Discrepancies in Kingtom's Records Do Not Provide Substantial Evidence of Evasion**

Throughout its remand R&R undermines the widespread discrepancies in Kingtom's records that TRLED discussed in detail in its initial determination, including those that R&R itself relied on to initially find evasion. *See* Remand at Addendum, p. 5. Contrary to R&R's characterization, the discrepancies at issue are not minor deficiencies resulting from clerical errors or a misunderstanding of the information requested but rather, critical discrepancies that called into question the reliability of Kingtom's submissions as a whole and indicated that Kingtom did not produce the claimed extrusions. There were discrepancies with respect to Kingtom's production and equipment usage records, supplier and input purchases, and accounting and payment. This meant that there was no reliable evidence that Kingtom produced the claimed extrusions. Widespread discrepancies in company records would not be expected for legitimate production. These discrepancies were evidence that Kingtom did <u>not</u> actually produce the claimedextrusions.

TRLED was not required to further investigate these discrepancies. The widespread discrepancies themselves constituted substantial evidence that Kingtom did not produce the claimed extrusions.

R&R misunderstands the standard of review for the agency's investigation imposed by the statute.  While the EAPA statute does not define "substantial evidence," CBP has relied on Federal Circuit case law finding that "substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  TRLED Determination at 3 n.23 (citing *A.L. Patterson, Inc. v*, 585 Fed. App'x at 781-82 (quoting *Consol. Edison Co. of N.Y.*, 305 U.S. at 229)); R&R Determination at 4 (citing *A.L. Patterson, Inc.*, 585 Fed. App'x at 781-82 (quoting *Consol. Edison Co. of N.Y.*, 305 U.S. at 229)).  Substantial evidence is "more than a mere scintilla," but "less than the weight of the evidence."  *Altx, Inc.*, 370 F.3d at 1116.[13] As R&R explained in its initial determination, "{w}hile some evidence may detract from the determination, so long as the finding is reasonable and supported by the record as a whole, {TRLED's initial determination of evasion} must be affirmed."  R&R Determination at 12 (citing *Nucor Corp. v. United States*, 34 CIT 70, 72 (2010) (citing *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006)).  R&R effectively imposes a higher standard of review – amounting to a clear and convincing standard.

R&R also misunderstands the nature of the agency's investigation.  TRLED initiated the investigation because there was evidence that Kingtom could not have produced all the extrusions entered into the United States.  The Importers' defense was that Kingtom did produce all the extrusions.  To prove this claim, the Importers (with Kingtom) needed to demonstrate that Kingtom's production records could be tied up without any gaps, to support the volume of extrusions that entered the United States.  The widespread discrepancies mean that the Importers and Kingtom could not justify their defense.  They were unable to rebut TRLED's findings.

---

[13]    While TRLED did not apply adverse inferences, even when adverse inferences are applied, the statute does not require the agency to provide parties with an opportunity to correct deficiencies prior to the application.  19 U.S.C. § 1517(c)(3).

CBP was under no obligation to affirmatively determine that Kingtom used Chinese extrusions. A respondent that denies an allegation and refuses to cooperate will never turn over damning evidence. As such, the agency will be forced to consider whether the target has complied with request to justify that it did manufacture what it claims, which the Importers and Kingtom could not do here.

TRLED and R&R properly relied on these discrepancies in the first place to find evasion. As R&R initially explained, "when looking at the totality of the circumstances regarding evidence of Kingtom's actual production levels coupled with Kingtom's affiliations with China, a finding of evasion due to the commingling of Chinese-origin extrusions with D.R.-origin extrusions is supported by substantial evidence in the record." R&R Determination at 14.

As such, R&R's broad dismissal of the discrepancies based on its claim that TRLED did not investigate further was in error.

**2. Regulations and Rulings' Factual Findings Are Unsupported by the Record**

R&R's factual findings in now finding no substantial evidence of evasion are unsupported by the record. R&R incorrectly concludes that discrepancies that TRLED found were not discrepancies, or it did not actually analyze the issue. These involve issues directly relevant to evaluating Kingtom's production capability and actual production, including supplier and input purchases, raw materials, production activity, size capabilities, and financial transactions, and provide substantial evidence that Kingtom did not produce the claimed extrusions.

*Suppliers/Input Purchases*

Regulations and Ruling erred in dismissing discrepancies with respect to Kingtom's suppliers and purchases. These discrepancies meant that CBP could not actually confirm who all

Kingtom's suppliers were and what they provided to Kingtom.  In other words, CBP could not confirm that Kingtom did not actually obtain Chinese extrusions from these suppliers.  TRLED had found that Kingtom sources material and equipment from many companies located in [                                                ].  TRLED Determination at 7.  But TRLED explained that due to discrepancies in Kingtom's submissions, it could not be certain who all of Kingtom's suppliers actually were and who supplied what type of materials to Kingtom.   TRLED Determination at 7.  For some suppliers, monetary transactions and proof of payment were missing.  *Id.*  For some suppliers the descriptions of what was supplied was [                    ], and there was no evidence as to what was actually provided.  *Id.*  TRLED even found that the suppliers identified by Kingtom did not even overlap with those that Kingtom claimed to have paid.  *Id.*

In now questioning these findings, which was based on information submitted by Kingtom in EAPA 7348 that was placed on the underlying investigation's record, R&R opines that TRLED did not follow up with Kingtom in EAPA 7348 or issue any RFI to Kingtom in this investigation.  Remand at Addendum, p. 9.  As discussed above, these and other discrepancies provided substantial evidence that Kingtom did not manufacture the claimed extrusions, and TRLED was not required to investigate further.

R&R suggests that the Importers provided information to resolve the discrepancies, explaining that the Importers provided a revised supplier list, which identified if Kingtom did not have any transactions with a specific supplier during the POI, and that this was supported by a review of the transactions and bank statements provided by Kingtom in EAPA 7348.  Remand at Addendum, p. 9.  But this does not resolve the issue.  R&R references a table provided by the Importers listing Kingtom's alleged transactions with suppliers during the POI.  *Id.* at

Addendum, p. 9 n.44; Importers' Joint Rebuttal Submission (Dec. 21, 2020) at 1, Part I, and Exhibit 1, C.R. 812-819, P.R. 678. While the Importers provided this list in December 2020, the data provided was only from January 2019 to April 2020, allegedly because Kingtom's account had not been worked out since that time. Importers' Joint Rebuttal Submission at Part I. The Importers (and Kingtom) provided selective information for only a portion of the POI. It is also unclear how R&R could verify the information related to certainsuppliers against the documents that Kingtom provided in EAPA 7348 because the Importers claimed Kingtom transacted with those suppliers after reporting in EAPA 7348. Importers' Joint Rebuttal Submission at Part I. Another problem is that for a large number of transactions, the Importers/Kingtom claim that Kingtom has a "[ ]," and did not provide any [ ] for the agency to be able to verify details regarding the purchase, [ ]. Importers' Joint Rebuttal Submission at Exhibit 1. There were also a large number of alleged purchases of [ ] that the Importers/Kingtom claim that Kingtom purchased from [ ]," allegedly [ ]. Importers' Joint Rebuttal Submission at Exhibit 1. There appears to be no way that R&R could have verified these purchases. This submission does not resolve the discrepancies with respect to Kingtom's suppliers.

This submission also demonstrates that Kingtom did not provide complete information when first asked in EAPA 7348. While TRLED requested that Kingtom identify "the roles of all parties involved in sourcing, manufacturing, selling, transporting, and completing purchasing transactions and explain each party's role, including selling/buying agents," it did not identify [ ] suppliers that the agency found in Kingtom's bank statements, while it identified others. TRLED Determination at 7; EAPA 7348 Determination at 6-7; Kingtom RFI Response Narrative

at 4-7. [ ] suppliers that TRLED found [ ] this new list. Importers' Joint Rebuttal Submission at Exhibit 1. Kingtom should have [ ]. That Kingtom did not do so further contributes to the unreliability of its submissions.

*Raw Materials*

Regulations and Ruling erred in dismissing the discrepancies with respect to Kingtom's aluminum ingot and scrap purchases. These discrepancies indicated that Kingtom did not have the necessary raw materials to produce the claimed volume of extrusions. Specifically, TRLED had explained that Kingtom had reported approximately the [ ] of aluminum ingot and scrap for two years but reported [ ] theoretical production volumes.

| Year | Aluminum Ingot (lb.) | Aluminum Scrap (lb.) | Theoretical Production Volume (lb.) | Export Volume (lb.) |
|---|---|---|---|---|
| 2019 | [ ] | [ ] | [ ] | [ ] |
| 2018 | [ ] | [ ] | [ ] | [ ] |

TRLED Determination at 12. In addition, TRLED also found Kingtom's reported ingot and scrap purchases unreliable because they were inconsistent with the typical proportions required to produce a billet. *Id.* AEFTC had provided an industry expert declaration, which explained that the typical proportions required to produce a billet are approximately 69 percent scrap aluminum, 30 percent primary aluminum, and 1 percent additional alloys. *Id.*; Allegation Narrative at 20; Allegation Exhibits at Exhibit 3. This expert was [ ] of an aluminum extruder that [ ] and previously worked as [ ] at [ ], with more than [ ] of experience in the

extrusion industry [ ]. Allegation Exhibits at Exhibit 3. As TRLED explained, there should be significantly more scrap than primary aluminum, not [ ] over a two-year period, further undermining the claim that Kingtom manufactured the claimed extrusions. TRLED Determination at 12.

R&R now opines that Kingtom collected aluminum scrap by-product from its production, and that this would lower the amount of scrap that Kingtom would need to purchase and would explain the discrepancy between raw materials purchased and used. Remand at 9. R&R did not actually analyze the issue, however. The agency references a sample bill of materials that Kingtom compiled, listing [ ], in addition to [ ]. Kingtom RFI Response at 27, Exhibit 32. Clearly, R&R could not have evaluated based on this information whether Kingtom actually had scrap production in sufficient quantities to support its claimed production.

*Financial Transactions*

Regulations and Ruling erred in dismissing the discrepancies between Kingtom's bank statements and its account receivable records or the bank statements of certain importers. Remand at Addendum, p. 6 (citing TRLED Determination at 15). These were additional discrepancies that TRLED had found that further cast doubt on the overall reliability of Kingtom's and the Importers' responses. TRLED Determination at 14. R&R now opines that a majority of the differences in the Importers' payment amounts and the amount deposited into Kingtom's bank account are small figures. Remand at Addendum, p. 6. The agency notes that Kingtom's bank statements and transaction summary show that the bank charged transaction fees. *Id.* R&R does not claim that all the differences are solely due to bank transaction fees, and the agency does not appear to have done the analysis. *Id.* Without doing so, R&R again faults

TRLED for not following up on these discrepancies.  Again, TRLED reasonably determined –
given the large number of discrepancies on a wide range of critical issues – that there is
substantial evidence in support of a conclusion that Kingtom did not manufacture the claimed
extrusions.  R&R's reversal without doing the necessary analysis itself is arbitrary, capricious,
and an abuse of discretion.

*Production Activity*

R&R improperly discounted the evidence indicating that Kingtom had minimal
production provided by AEFTC and contained in the U.S. Government site visit report.  R&R
opines that the industry expert declarations provided by AEFTC and the U.S. Government report
only provide snapshots of Kingtom's facility.  Remand at Addendum, pp. 7-8.  R&R's
conclusion is unreasonable and does not follow from the facts.  That different parties observed
Kingtom's facility at different times ([

]) and each time observed minimal production ([

]) supports a conclusion that Kingtom had minimal production.  *See*
Allegation Exhibits at Exhibit 3, Exhibit 9; Attaché Report at 1.  While not acknowledged by
R&R, there was another visit to Kingtom's facility in [          ], which also found minimal
production (only one press operating with the others idle or down for repairs).  EAPA 7348
Determination at 1.  And contrary to R&R's suggestion, the declarations that AEFTC provided
were sworn affidavits that provided extensive detail demonstrating the qualifications of the
declarants and the reliability of those declarations.  *See* Allegation Exhibits at Exhibit 3, Exhibit
9.

*Size Capabilities*

R&R improperly dismissed the discrepancies with respect to the sizing capabilities of Kingtom's extrusion presses, which suggested that Kingtom could not produce the sizes of the extrusions that it exported. R&R opines that TRLED relied upon a generalized statement from AEFTC's expert to find that some of the presses at Kingtom could not produce the size of extrusions exported to the United States and that there is no evidence that the limitations on the production capabilities of Kingtom's presses were tested and proven correct. Remand at Addendum, p. 6. AEFTC provided a declaration from an industry expert that attested that based on their knowledge of the industry and the extrusion presses that were observed operating at Kingtom's facility, Kingtom would not be able to produce all the extrusions in the necessary sizes.[14] For example, the size of the aluminum profile on any given press is normally 1.5 inches less than the size of the press diameter, in terms of width. Allegation Exhibits at Exhibit 3. But evidence showed that in [ ], Kingtom sold [ ] profiles that are 7 inches wide. Allegation Exhibits at Exhibit 3. To produce a 7-inch profile, a 9-inch press or larger would be needed. Allegation Exhibits at Exhibit 3. But as of [ ], Kingtom only had 4-, 5-, and 6-inch presses, in addition to the cast house only having tables designed to produce billets for these size presses. Allegation Exhibits at Exhibit 3. Cast house tables are not easily changed without significant capital expenditures. Allegation Narrative at 11. This evidence further raised questions as to Kingtom's capacity and capability, in addition toother record evidence, indicating that Kingtom did not manufacture the claimed extrusions.

---

[14] AEFTC provided a declaration from [ ], [ ] of [ ], an aluminum extruder that is a member of the Aluminum Extruders Council, and who previously worked as [ ] at [ ]. Allegation Exhibits at Exhibit 3.

In sum, in addition to the erroneous conclusion that the discrepancies cannot provide substantial evidence of evasion, R&R erroneously dismissed of these discrepancie.  R&R's review of these critical issues was cursory, and it made factual findings that are unsupported by the record or without analyzing the issue.

### C.     CBP Acted Arbitrarily in Not Applying Adverse Inferences Against Parties that Refused to Provide Requested Information

CBP acted arbitrarily in not applying adverse inferences against parties that refused to provide requested information in the remand proceeding.  The statute authorizes CBP to "use an inference that is adverse to the interests of" the party alleged to have imported the merchandise at issue through evasion if the agency finds that the party "has failed to cooperate by not acting to the best of {its} ability to comply with a request for information."  19 U.S.C. § 1517(c)(3)(A).  In making an adverse inference, the statute permits CBP to rely on the allegation pursuant to which the investigation was initiated; a determination by CBP in another investigation, proceeding, or other action regarding evasion; or any other available information.  19 U.S.C. § 1517(c)(3)(C).  Here, where parties refused to provide information expressly requested by CBP, despite multiple opportunities, the parties clearly failed to cooperate to the best of their abilities.

In remanding the proceeding to the agency, the Court noted that the Government requested the remand, in part, to permit CBP to "provide the parties with public summaries of business confidential information in the administrative record."  Remand Order.  As part of the remand proceeding, TRLED requested that the parties submit revised public versions of their submissions made in the underlying investigation that contained business confidential information that include public summaries with sufficient detail to permit a reasonable understanding of the substance of the bracketed information, in accordance with 19 C.F.R. § 165.4(a)(2).  Remand at 8.  CBP has revised its practice with respect to public summaries, to

not allow parties to simply redact business confidential information in the public versions of documents, *i.e.*, include brackets with a blank space in between, to comply with certain holdings of this Court. *See* AEFTC Remand Written Arguments (Nov. 7, 2022), P.R.R. 148 at 4; *Royal Brush Mfg., Inc. v. United States*, 483 F.Supp.3d 1294 (Ct. Int'l Trade 2020) ("*Royal Brush I*"); *Royal Brush Mfg., Inc. v. United States*, 545 F.Supp.3d 1357 (Ct. Int'l Trade 2021) ("*Royal Brush II*").[15] CBP had not yet fully imposed this requirement during the underlying investigation.

In its request for revised public versions of submissions, TRLED also noted that it would provide parties with the opportunity to submit rebuttal information and written arguments in response to the revised public versions. Letter from TRLED, re: *H&E Home Inc. et al v. United States, CIT No. 21-337* (Sept. 16, 2022), P.R.R. 4 at 2. All parties initially submitted revised public versions of the requested documents. Remand at 9-10. However, TRLED found that four parties – Industrias, JL, Puertas, and Global – failed to include public summaries that satisfied the requirements of 19 C.F.R. § 165.4(a)(2). Remand at 10. TRLED explained that (1) the sales documents and other company documents lacked adequate public summaries and (2) business confidential information was redacted in the narrative sections of each submission and did not have the requisite corresponding public summaries. Remand at 10. As such, TRLED rejected those submissions but provided an opportunity to submit corrected public versions of their

---

15 In remanding an EAPA proceeding for CBP to comply with the public summary requirement of 19 C.F.R. § 165.4, in *Royal Brush I*, this Court observed, inter alia, that "the public version of Dixon's Allegation redacts the confidential information in the narrative portion and omits the exhibits but does not separately summarize the confidential information in a public document." *See Royal Brush I*, 483 F.Supp.3d at 1307. CBP took similar steps in the remand proceeding in *Royal Brush* that it did here – requiring parties to submit revised public summaries and itself providing revised public summaries and then allowing parties to the investigation to submit rebuttal information and written arguments pertinent to the revised public versions. *See Royal Brush II*, 545 F.Supp.3d at 1364-65.

submissions.  Remand at 10.  At the request of JL, Industrias, and Puertas, TRLED extended the deadline to submit the corrected documents.  Remand at 10.

However, all four parties failed to submit the requested documents.  Remand at 10.  Instead of submitting the requested documents, the importers sought assurances from the U.S. Department of Justice attorney ("DOJ"), *i.e.*, CBP's outside counsel, that there would be no application of adverse inferences even if they did not submit the corrected documents.  AEFTC Remand Written Arguments at 5.  However, DOJ is an outside agency of the Government and had no authority to make decisions for CBP under the EAPA statute.  TRLED reasonably requested that parties submit revised public versions of their submissions with public summaries, given that one of the three reasons for the remand was for the agency to "provide the parties with public summaries of business confidential information in the administrative record."  Remand Order at 2.  It was unreasonable to not allow TRLED to require compliance with its request, and to prevent the agency from applying adverse inferences for a failure to do so.

Given the clear failure to cooperate to the best of their abilities, AEFTC argued that the agency should apply adverse inferences against these parties.  AEFTC Remand Written Arguments at 3-6; AEFTC Draft Remand Comments (Dec. 9, 2022), P.R.R. 151 at 7-8.  TRLED declined to do so, even thought it had warned these parties that the failure to resubmit corrected public versions of the requested documents would result in adverse inferences.  Email from TRLED, (Oct. 14, 2022), P.R.R. 142.  First, TRLED explained that the statute does not require the agency to apply adverse inferences and that the decision to do so is discretionary.  Remand at 18.  Second, TRLED concluded that the failure to resubmit revised public summaries did not create a gap in the administrative record because CBP was not requesting new information but revised public versions of information already on the record.  Remand at 18.  In addition,

TRLED stated that to apply adverse inferences would be futile as CBP already reviewed and considered confidential versions of all documents and the parties already have access to such documents under the judicial protective order.  Remand at 18-19.  Third, TRLED explained that it was addressing procedural deficiencies on the record while R&R was revisiting and reweighing the record evidence in light of CBP's remand determination in EAPA 7348.  Remand at 19.  If the above is true, CBP wasted the remaining parties' resources by requiring them to submit revised public versions of their record documents.  To require select parties to comply with the agency's requests for information but not others is arbitrary, capricious, and an abuse of discretion.

Despite not applying adverse inferences, the agency further justified its request for revised public versions.  TRLED explained that the purpose was to rectify procedural deficiencies in the underlying investigation and for the parties to the investigation to access the additional public information that the regulations require and were not initially provided. Remand at 24.  Thus, CBP's refusal to apply adverse inferences does not follow from the facts or the agency's own reasoning, and was arbitrary, capricious, and an abuse of discretion.

## VII. CONCLUSION

For the foregoing reasons, AEFTC respectfully requests that the Court find CBP's remand to be arbitrary, capricious, and an abuse of discretion and remand the decision for reconsideration consistent with the Court's opinion.

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Elizabeth S. Lee, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for the Aluminum Extrusions Fair Trade Committee*

Dated: April 25, 2023

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that these comments comply with the word limitation requirement.  The word count for the Aluminum Extrusions Fair Trade Committee's Comments in Opposition to Remand Redetermination, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2016), is 9,922 words.

*/s/ Robert E. DeFrancesco, III*
(Signature of Attorney)

Robert E. DeFrancesco, III
(Name of Attorney)

Aluminum Extrusions Fair Trade Committee
(Representative Of)

April 25, 2023
(Date)