IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| H&E Home, Inc. and Classic Metals Suppliers, | |
| Plaintiffs, | Before: Hon. Richard K. Eaton, Judge |
| and | Consol. Court No. 21-00337 |
| Global Aluminum Distributor LLC, Industrias Feliciano Aluminum, Inc., JL Trading Corp., and Puertas y Ventanas J.M., Inc., | |
| Consolidated Plaintiffs, | |
| and | |
| Kingtom Aluminio S.R.L. | |
| Plaintiff-Intervenor, | |
| v. | |
| United States, | |
| Defendant, | |
| and | |
| Aluminum Extrusions Fair Trade Committee, | |
| Defendant-Intervenor. | |

## DEFENDANT'S RESPONSE TO DEFENDANT-INTERVENOR'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

|                                         |                                         |
|-----------------------------------------|-----------------------------------------|
|                                         | AIMEE LEE                               |
| Of Counsel:                             | Assistant Director                      |
|                                         |                                         |
| Tamari J. Lagvilava                     | ALEXANDER VANDERWEIDE                   |
| Office of Chief Counsel                 | Senior Trial Counsel                    |
| U.S. Customs and Border Protection      | Civil Division, U.S. Dept. of Justice   |
|                                         | Commercial Litigation Branch            |
|                                         | 26 Federal Plaza, Room 346              |
|                                         | New York, New York 10278                |
|                                         | Tel. (212) 264-9230 or 0482             |
|                                         | Attorneys for Defendant                 |
|                                         |                                         |
| Dated: July 24, 2023                    |                                         |

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 2

LEGAL STANDARD........................................................................................................ 5

   I.     The Enforce And Protect Act ................................................................ 5

   II.    Standard of Review ............................................................................... 7

ARGUMENT ..................................................................................................................... 8

   I.     CBP Adequately Explained Its Reasoning and Change of Position on Remand .......... 8

   II.    The Record Does Not Contain Substantial Evidence of Evasion .............................. 14

      A.  The Record Does Not Contain Widespread Discrepancies Evidencing Evasion ...... 17

      B.  CBP's Findings Are Supported By The Record ...................................... 19

   III.   CBP Correctly Declined To Apply Adverse Inferences On Remand ....................... 23

CONCLUSION ................................................................................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*Aluminum Extrusions Fair Trade Committee v. United States*,
Court No. 22-00236 ............................................................................................ 10

*American Pacific Plywood, Inc. v. United States*,
2023 WL 4288346 (Ct. Int'l Trade June 22, 2023) .......................................... 14

*Atl. Sugar, Ltd. v. United States*,
744 F.2d 1556 (Fed. Cir. 1984)........................................................................... 20

*Consolidated Fibers Inc. v. United States*,
535 F. Supp. 2d 1345 (Ct. Int'l Trade 2008) ..................................................... 20

*Diamond Tools Tech. LLC v. United States*,
609 F. Supp. 3d 1378 (Ct. Int'l Trade 2022) ....................................................... 8

*Essar Steel Ltd. v. United States*,
678 F.3d 1268 (Fed. Cir. 2012)............................................................................. 8

*F.C.C. v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009).............................................................................................. 9

*FPC v. Transcon. Gas Pipe Line Corp.*,
423 U.S. 326 (1976)......................................................................................... 8

*Global Aluminum Distributor LLC v. United States,*
Consol. Court No. 21-00198 ...............................................................4, 10,11, 23

*Invenergy Renewables LLC v. United States,*
476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020) ................................................ 9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)........................................................................................ 14

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*,
545 U.S. 967 (2005)........................................................................................ 9

*NMB Singapore Ltd. v. United States*,
557 F.3d 1316 (Fed. Cir. 2009)........................................................................ 9

*PSC VSMPO-Avisma Corp. v. United States*,
688 F.3d 751 (Fed. Cir. 2012)..................................................................... 7, 8

*Royal Brush Manufacturing, Inc. v. United States,*
483 F.Supp.3d 1294 (CIT 2020) .................................................................. 24

*Royal Brush Mfg., Inc. v. United States,*
545 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ........................................... 14, 25

*SKF USA Inc. v. United States,*
263 F.3d 1369 (Fed. Cir. 2001).................................................................... 7

*Star Fruits S.N.C. v. United States*,
393 F.3d 1277 (Fed. Cir. 2005)..................................................................... 7

*WelCom Prods., Inc. v. United States,*
865 F. Supp. 2d 1340 (Ct. Int'l Trade 2012) .............................................. 7

*Wheatland Tube Co. v. United States,*
161 F.3d 1365 (Fed. Cir. 1998)...................................................................... 7

**Statutes**

19 U.S.C. § 1517.............................................................................................. 2

19 U.S.C. § 1517(a)(5) ..................................................................................... 6

19 U.S.C. § 1517(b)(1) ..................................................................................... 5

19 U.S.C. § 1517(c)(1)(A) ............................................................................ 6, 14

19 U.S.C. § 1517(c)(2) ............................................................................................ 6

19 U.S.C. § 1517(c)(3)(a) ...................................................................................... 23

19 U.S.C. § 1517(e) ................................................................................................ 6

19 U.S.C. § 1517(f) ................................................................................................ 7

19 U.S.C. § 1517(g)(1) ........................................................................................... 7

19 U.S.C. § 1517(g)(2) ........................................................................................... 7

The Trade Facilitation and Trade Enforcement Act of 2015,
Pub. L. No. 114-125, 130 Stat. 122 (2016) ........................................................... 5

The Enforce and Protect Act of 2015 (EAPA) ............................................... *passim*

The Dominican Republic-Central American Free Trade Agreement,
Pub. L. No. 109-53, 119 Stat. 462 (2005) ........................................................... 15

## Regulations

19 C.F.R. § 165.21 .................................................................................................. 6

19 C.F.R. § 165.22 .................................................................................................. 6

19 C.F.R. § 165.23 .................................................................................................. 6

19 C.F.R. § 165.4(a)(2) ......................................................................................... 24

19 C.F.R. § 165.6 .................................................................................................. 23

19 C.F.R. § 165.27 ................................................................................................ 25

## Other Authorities

*Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order,*
76 Fed. Reg. 30,650 (May 26, 2011) ..................................................................... 3

*Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order,*
76 Fed. Reg. 30,653 (May 26, 2011) ..................................................................... 3

NY N310801 (Apr. 14, 2020) ......................................................................... 15, 17

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| H&E Home, Inc. and Classic Metals Suppliers, | |
| Plaintiffs, | Before: Hon. Richard K. Eaton, Judge |
| and | Consol. Court No. 21-00337 |
| Global Aluminum Distributor LLC, Industrias Feliciano Aluminum, Inc., JL Trading Corp., and Puertas y Ventanas J.M., Inc., | |
| Consolidated Plaintiffs, | |
| and | |
| Kingtom Aluminio S.R.L. | |
| Plaintiff-Intervenor, | |
| v. | |
| United States, | |
| Defendant, | |
| and | |
| Aluminum Extrusions Fair Trade Committee, | |
| Defendant-Intervenor. | |

## DEFENDANT'S RESPONSE TO DEFENDANT-INTERVENOR'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Defendant, the United States, respectfully submits this response to the motion for

judgment upon the agency record, and comments in opposition to the remand redetermination,

filed by defendant-intervenor, Aluminum Extrusions Fair Trade Committee (AEFTC). ECF Nos.

81-83. The AEFTC challenges, as arbitrary, capricious, and an abuse of discretion, U.S.

Customs and Border Protection's (CBP) remand redetermination following an investigation

pursuant to the Enforce and Protect Act (EAPA), 19 U.S.C. § 1517, that the agency record does not contain substantial evidence that plaintiffs and consolidated plaintiffs, H&E Home Inc. (H&E), Classic Metals Suppliers (Classic Metals), Global Aluminum Distributor, LLC (Global), Industrias Feliciano Aluminum Inc. (Industrias), JL Trading Corp. (JL), and Puertas y Ventanas J.M., Inc. (Puertas) (collectively, the Importers), imported aluminum extrusions from Kingtom Aluminio S.R.L. (Kingtom) by means of evasion.  As set forth below, CBP did not act arbitrarily, capriciously, or erroneously in concluding, upon remand, that there is not substantial evidence on the record to support a finding of evasion.

## I.    Administrative Determination Under Review

The AEFTC challenges CBP's remand redetermination in EAPA Consol. Case No. 7423, issued on January 5, 2023, and filed with the Court on January 10, 2023.  ECF No. 73 (Remand Redetermination).

## II.    Issues Presented For Review

1. Whether the Remand Redetermination reversing CBP's prior administrative decisions of evasion is arbitrary, capricious, or an abuse of discretion.

2. Whether CBP's conclusion on remand that the agency record does not contain substantial evidence of evasion is arbitrary, capricious, or an abuse of discretion.

3. Whether CBP's decision not to apply adverse inferences on remand was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## BACKGROUND

On May 26, 2011, the U.S. Department of Commerce issued antidumping duty order A-570-967 and countervailing duty order C-570-968, which set forth its determination that imports of Chinese-extruded aluminum are subject to antidumping and countervailing duties.  *Aluminum*

*Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (May 26, 2011); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (May 26, 2011) (collectively, the Orders).

On January 27, 2020, CBP initiated a formal EAPA investigation in response to an allegation of evasion filed by the AEFTC, a committee of domestic producers of aluminum extrusions.  ECF No. 26-2, Confidential Admin. Rec. Doc (C.R.) No. 824; ECF 25-2, Public Admin. Rec. Doc. (P.R.) No. 684 (TRLED Determination).  The AEFTC alleged that the Importers and Florida Aluminum Extrusion, LLC (Florida) imported Chinese-origin aluminum extrusions into the United States by transshipment through Kingtom, a Dominican Republic producer and exporter of aluminum extrusions, to evade the payment of antidumping and countervailing duties (AD/CVD) on aluminum extrusions subject to the Orders.  CBP's ensuing investigation was designated EAPA Consol. Case No. 7423 (EAPA 7423).

On January 28, 2021, CBP's Trade Remedy & Law Enforcement Directorate (TRLED) issued a notice of determination of evasion, finding substantial evidence that the Importers entered into the United States Chinese-origin aluminum extrusions that were either comingled or transshipped through Kingtom's facility in the Dominican Republic, with a claimed country of origin as the Dominican Republic.  *See* TRLED Determination.  As a result, CBP suspended or continued to suspend the Importers' entries, rate-adjusted any previously extended entries to type 03 (AD/CVD), and continued to require single transaction bonds as appropriate.  *Id*.

Upon requests from the Importers, CBP's Regulations and Rulings (R&R) conducted an administrative *de novo* review of the TRLED Determination.  ECF No. 25-3, P.R. No. 712 (R&R Review).  On June 4, 2021, R&R affirmed TRLED's determination of evasion.  *Id*.

Collectively, the Importers brought three actions challenging CBP's administrative determinations before this Court, the respective cases were consolidated, the AEFTC joined the consolidated action as defendant-intervenor, and Kingtom as plaintiff-intervenor.  ECF Nos. 15, 19, 33.  On November 18, 2021, the Court stayed this action pending the outcome of *Global Aluminum Distributor LLC v. United States,* Consol. Court No. 21-00198 (*Global*), which concerned EAPA Consol. Case No. 7348 (EAPA 7348).  Of importance, the record for EAPA 7423 (at issue here) incorporates much of the *Global* record (EAPA 7348).  *Global* concerned very similar allegations of evasion (albeit submitted by a different alleger) against Global, Florida, and another importer, and also involved aluminum extrusions exported by Kingtom.  In *Global*, after a voluntary remand by CBP to reconsider, and ultimately reverse, its affirmative duty evasion determinations, the Court sustained the uncontested remand redetermination.  Court No. 21-00198, ECF Nos. 102, 103.

Thereafter, the Court lifted the stay in this action, ECF No. 62, and we moved to remand the action to CBP so that the agency could

> (1) provide the parties with public summaries of business confidential information in the administrative record; (2) review and consider documents that were mistakenly omitted from the administrative record;[1] and (3) revisit and reweigh the record evidence in light of CBP's remand determination in EAPA Consol. Case No. 7348, *Global Aluminum Distributor LLC et al. v. United States et al.*, Court No. 21-00198 (*Global*) in order for CBP to reevaluate its decision that substantial evidence of evasion exists.

ECF No. 65.  The Court granted our motion, and among other relief, ordered "that the June 4, 2021 determination by Customs in the administrative review of EAPA Consol. Case Number

---

[1] Multiple documents were mistakenly omitted from the administrative record, and were thus not reviewed by CBP when rendering its decision on evasion in the R&R Review.  These omissions have necessitated three separate motions for leave to supplement the record, which this Court has granted.  ECF Nos. 31, 32, 48, 49, 51, 52.

7423 is remanded to Customs for further consideration."  ECF No. 70.  Once the remand was

completed, CBP filed its remand redetermination, which among other findings, reversed R&R's

affirmation of evasion and found "that there is not substantial evidence to support a finding of

evasion as to the Importers."  Remand Redetermination Addendum at 11.

In accordance with the briefing schedule entered by the Court, ECF No. 79, the AEFTC

filed their motion for judgment upon the agency record and accompanying comments in

opposition to the Remand Redetermination.  ECF Nos. 81-83.  Below we provide our comments

in support of the Remand Redetermination, and respond to the AEFTC's comments.

## LEGAL STANDARD

### I.  The Enforce And Protect Act

In 2016, the President signed into law The Trade Facilitation and Trade Enforcement Act

of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat. 122 (2016).  Title IV, Section 421 of TFTEA,

commonly referred to as the "Enforce and Protect Act" or "EAPA," established a new CBP

administrative procedure for investigating allegations of evasion of AD/CVD orders as part of

the agency's efforts to ensure a level playing field for domestic industries.  *See generally*

https://www.cbp.gov/sites/default/files/assets/documents/2016Oct/Trade%20Facilitation%20and
%20Trade%20Enforcement%20Act%20of%202015%20-%20Overview.pdf.

Under EAPA, federal agencies or interested parties—including U.S. and foreign

manufacturers, producers, exporters; certified unions or recognized unions or groups of workers;

and trade or business associations in a particular industry—may submit allegations to CBP that

merchandise covered by an AD/CVD order has entered the United States through evasion.  If

such allegations reasonably suggest that evasion is occurring, within 15 calendar days of

receiving an allegation, CBP must initiate an investigation.  19 U.S.C. § 1517(b)(1).  Within 90

calendar days, CBP must make an initial determination of whether there is reasonable suspicion of evasion and, if so, issue interim measures, which includes the suspension and extension of liquidation for certain entries. 19 U.S.C. § 1517(e). The EAPA statute grants CBP broad discretion to determine the investigation's scope and means, including the authority to collect and verify any information it deems necessary to make its evasion determination. 19 U.S.C. § 1517(c)(2). CBP's regulations set forth the types, and requirements for the submission, of factual information by parties. 19 C.F.R. § 165.23. For example, parties to the investigation may voluntarily submit information to CBP or may provide information in response to requests by CBP. *Id.* Parties to the investigation have 200 days from the date on which the investigation was initiated to submit factual information on the record, and 230 calendar days to submit written arguments. *Id.* Parties to the investigation have 15 calendar days to submit responses to other parties' written arguments. *Id.* Interested parties who are not parties to the investigation may provide information only in response to requests by CBP. *Id.*

During the investigation, CBP maintains an administrative record of material obtained and considered by CBP during the investigation, as well as record information submitted by interested parties. 19 U.S.C. § 1517(c)(2); 19 C.F.R. § 165.21. No later than 300 calendar days after the investigation's initiation, CBP is required to make a determination as to whether the administrative record contains substantial evidence to conclude that AD/CVD duties have been evaded. 19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22. An evasion occurs when covered merchandise is entered by a material and false document, statement, or act, or material omission, which results in a cash deposit, security, or applicable AD or CVD amount being reduced or not applied. 19 U.S.C. § 1517(a)(5). Interested parties are permitted to request an administrative review of the initial determination, and CBP must complete the review and issue a final

administrative review determination no later than 60 business days after such a request. 19

U.S.C. § 1517(f). EAPA allows for judicial review in this Court of CBP's final administrative

determination and the original determination as to evasion, provided that an action is commenced

within "30 business days" after CBP completes an administrative review under subsection (f).

19 U.S.C. § 1517(g)(1).

## II.     Standard of Review

In reviewing CBP's determinations, this Court considers whether CBP complied with

procedures under the EAPA statute and whether, in reaching its ultimate determination on

evasion, any determination, finding, or conclusion made by CBP is arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law. 19 U.S.C. § 1517(g)(2).

"Courts look for a reasoned analysis or explanation for an agency's decision as a way to

determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."

*Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998). "An abuse of

discretion occurs where the decision is based on an erroneous interpretation of the law, on factual

findings that are not supported by substantial evidence, or represent an unreasonable judgment in

weighing relevant factors." *WelCom Prods., Inc. v. United States*, 865 F. Supp. 2d 1340, 1344

(Ct. Int'l Trade 2012) (citing *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir.

2005)). "An agency action is arbitrary when the agency offers insufficient reasons for treating

similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir.

2001).

When reviewing CBP's determinations, "absent constitutional constraints or extremely

compelling circumstances," this Court "will defer to the judgment of an agency regarding the

development of the agency record." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751,

760 (Fed. Cir. 2012) (explaining the Court's role in reviewing Commerce's antidumping duty administrative determinations).  "To do otherwise would 'run the risk of propelling the courts into the domain which Congress has set aside exclusively for the administrative agency.'"  *Id.* (quoting *FPC v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)).  Rather, "{t}he role of judicial review is limited to determining whether the record is adequate to support the administrative action."  *PSC*, 688 F.3d at 761; *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) (reversing order instructing Commerce to consider extra-record information because "the trial court's order usurps agency power, undermines Commerce's ability to administer the statute entrusted to it, contradicts important principles of finality, and discourages compliance").

Where, as here, the agency's decision after remand is under consideration, the Court "also reviews the Remand Results for compliance with the court's remand order."  *Diamond Tools Tech. LLC v. United States*, 609 F. Supp. 3d 1378, 1382 (Ct. Int'l Trade 2022) (internal quotation marks and citation omitted).

## ARGUMENT

### I.    CBP Adequately Explained Its Reasoning and Change of Position on Remand

The AEFTC contends that "R&R's remand is arbitrary, capricious, and an abuse of discretion because the agency relied on most, if not all, of the same evidence that it initially found to support a finding of evasion."  AEFTC Mot. at 14.  We first note that the record before CBP when issuing its Remand Redetermination includes supplementary materials that were not available to CBP when issuing its affirmative determinations of evasion, including public summaries and party arguments with respect to such, certain entry data reports, fact sheets, importer responses to CBP's request for information (RFI), and record evidence from EAPA

7348.  Remand Redetermination Addendum at 2 and fn. 2.  Regardless of the differences between the records, even if the AEFTC is correct that the Remand Redetermination was largely based on the same evidence as the R&R Review, that does not, in and of itself, render the Remand Redetermination arbitrary, capricious, or an abuse of discretion.

This Court has recognized that "when an agency changes its position, the Supreme Court stated that an agency must acknowledge its change and provide a rational explanation for the change." *Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323, 1349 (Ct. Int'l Trade 2020) (*Invenergy*) (citing *F.C.C. v. Fox Television Stations, Inc*., 556 U.S. 502, 517 (2009)).  In part, *Invenergy* concerned a challenge, under the Administrative Procedures Act (APA), that the United States Trade Representative's (USTR) second withdrawal of a bifacial solar panels exclusion to a solar products safeguard measure was arbitrary and capricious.  The Court concluded that the second withdrawal was "likely arbitrary and capricious because USTR failed to adequately explain its reasoning and did not provide an adequate explanation of its change in position between the June 2019 Exclusion and the Second Withdrawal of that exclusion."  476 F. Supp. 3d at 1350.  *See also id.*, quoting *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs*., 545 U.S. 967, 981 (2005) ("Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change."); *id.* at 1351, quoting *NMB Singapore Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009) ("[W]hile its explanations do not have to be perfect, the path of [an agency's] decision must be reasonably discernable to a reviewing court.").

Here, the Remand Redetermination satisfies the criteria referenced and articulated in *Invenergy*, as on remand, CBP adequately explained its reasoning and change in position from the R&R Review.  As stated in the Remand Redetermination, CBP explained that:

> Further review and analysis of the administrative record as
> transmitted by TRLED to R&R, both prior to the issuance of the
> R&R June 4 FAD and during this remand period, and the written
> comments on the draft remand redetermination submitted by some
> of the parties during this remand period, continue to lead R&R to
> reach a different conclusion in this remand, from the conclusion
> reached in the June 4 FAD.  We note that the facts and
> circumstances of this EAPA case and EAPA Cons. Case No. 7348
> are almost identical, with many of the same record documents
> gathered in EAPA Cons. Case No. 7348 added to the
> administrative record in EAPA Cons. Case No. 7423. As R&R did
> in EAPA Cons. Case No. 7348, R&R is reversing its original
> finding of evasion in the instant EAPA Cons. Case No. 7423.

Remand Redetermination Addendum at 3.  As such, CBP specifically reversed course on remand

and reached a different conclusion from the R&R Review because "the facts and circumstances

of this EAPA case and EAPA Cons. Case No. 7348 are almost identical," and "{a}s R&R did in

EAPA Cons. Case No. 7348, R&R is reversing its original finding of evasion in the instant

EAPA Cons. Case No. 7423."  *Id*.  Thus, the Remand Redetermination brings the disposition of

EAPA 7423 in line with the "almost identical" EAPA 7348, wherein the uncontested remand

redetermination of no evasion was sustained by this Court.

Additionally, the period of investigation at issue in *Global* (October 9, 2018 to November

2, 2020) largely overlaps with the period of investigation at issue in this action (January 10, 2019

to January 28, 2021).  *See* C.R. 58 at 3; Court No. 21-00198, ECF No. 36-6, C.R. 174 at 2.  We

also note that EAPA Case No. 7550 (EAPA 7550), which is the subject of *Aluminum Extrusions*

*Fair Trade Committee v. United States*, Court No. 22-00236, likewise involves similar

allegations of evasion against Kingtom as an importer, and concerns a January 8, 2020 to

February 4, 2022 period of investigation.  *See* Court No. 22-00236, C.R. 9.  In that case, R&R

reversed TRLED's determination of evasion in its administrative review, which the AEFTC is

challenging before this Court.  Therefore, despite CBP's initial affirmative determinations of

10

evasion in the present action and in *Global*, CBP has now consistently found no substantial evidence of evasion in all related Kingtom EAPA cases.

Moreover, although CBP characterizes its Remand Redetermination as "{f}urther review and analysis," or as "further reconsideration," we stress that the R&R Review failed to conduct a thorough and comprehensive *de novo* review and analysis of the TRLED Determination in the first place.  Indeed, the R&R Review's analysis of whether substantial evidence of evasion exists is only two pages and essentially recites and mirrors the findings and conclusions drawn by the TRLED Determination.  R&R Review at 13-14.  In contrast, the Remand Redetermination not only considers a more complete, supplemented record, but also methodically, and in detail, critically reviews the record materials and arguments cited by the TRLED Determination *but left unaddressed in the R&R Review*.  Recognizing the deficiencies in the R&R Review, CBP summarizes its change in position on remand at the outset of the Remand Redetermination as follows:

> There is no dispute that Kingtom has the ability to produce aluminum extrusions in the Dominican Republic. Rather, the dispute is whether Kingtom had the ability to produce and did produce the aluminum extrusions it exported to the United States during the period here at issue. In the June 4 FAD, we were unpersuaded that the aluminum extrusions exported to the United States had been produced in the Dominican Republic. After further reconsideration, we find that the record does not contain sufficient evidence to meet the evidentiary standard of substantial evidence of evasion because documents within the record were erroneously disregarded as unreliable during the investigation and original *de novo* review. The R&R June 4 FAD focused primarily on some alleged discrepancies in the documentation provided by Kingtom, as well as on the lack of production capability analysis performed by the Importers during their own site visits, while disregarding the remaining record evidence demonstrating Kingtom's production capabilities and capacity and explanations for a majority of the discrepancies described in the original TRLED January 28 Determination. Thus, upon further review of the administrative record, we find that our focus on the claimed discrepancies was

> misplaced, and that substantial evidence on the record as a whole does not support a finding of evasion.

Remand Redetermination Addendum at 3-4.  Similarly, near the conclusion of its Remand Redetermination, CBP clearly states: "As explained above, many of the discrepancies upon which the TRLED January 28 Determination and the R&R June 4 FAD relied have logical explanations that should have received more consideration during the original *de novo* review process."  *Id*. at 10; *see also id*. at 6 ("Additionally, other inconsistencies noted by the TRLED January 28 Determination, but not addressed in the R&R June 4 FAD, have logical explanations as provided by the Importers in their Requests for Administrative Review, but were not previously followed up on during the course of the investigation.").

The AEFTC maintains, however, that CBP improperly relied on the same record evidence to reach opposite conclusions about Kingtom's production activity and ties to China. AEFTC Mot. at 16-20.  But the standard of review is not whether CBP may or may not refer to the same evidence on remand; rather, the standard is whether CBP has adequately explained the reasons for its change in position.  On that score, on remand, CBP specifically addressed the deficiencies of the TRLED Determination's findings and R&R Review's conclusions with respect to Kingtom's production abilities and its Chinese ties, and then explained in granular detail why it disagrees with those findings and conclusions.

For instance, with respect to its position change regarding the record evidence for Kingtom's production capabilities (AEFTC Mot. at 17), CBP explained that the TRLED Determination and R&R Review did not actually consider and analyze the record evidence of "purchase orders, employee records, contracts, bank records, invoices, financial statements, production records, raw material purchase documentation, videos, and photographs, all indicating that Kingtom had the capacity and capability to produce aluminum extrusions in its

12

Dominican Republic factory in the quantities that were exported to the United States on a custom order basis."  Remand Redetermination Addendum at 5.  *See also, e.g., id*. (explaining that the R&R Review did not discuss that the TRLED Determination "appears to conflate the monthly theoretical production volume and monthly sales volume figures provided by Kingtom and treat them as interchangeable when they are wholly different figures."); *id*. at 6 ("Generally speaking, it stands to reason that production and sales numbers cannot be viewed within rigid timeframes and expected to mirror one another due to fluctuations and the realities of manufacturing. This alleged discrepancy goes to the core question presented in this case and is indeed not a discrepancy; the June 4 R&R FAD erred in not addressing this point. We correct that error in this remand redetermination.").

With respect to its differing view, on remand, of Kingtom's Chinese ties (AEFTC Mot. at 19), CBP examined those purported ties and found that "nothing in the record indicates that any aluminum ingots or scrap were supplied by Chinese companies; rather, the record shows that ingots and scrap were sourced from other countries."  Remand Redetermination Addendum at 9. In so finding, CBP highlighted the TRLED Determination's repeated pattern (left critically unexamined in the R&R Review) of drawing adverse conclusions regarding purported discrepancies, without considering other logical explanations or investigating the matter further with follow-up RFIs.  *Id*. at 8-10.

After taking a critical eye to CBP's previous inferences regarding Kingtom's production abilities and Chinese ties, the Remand Redetermination clearly explains the grounds for rejecting the conclusions drawn by the TRLED Determination and R&R Review as follows:

> Failure to provide information that was not requested by CBP
> during the investigation is not a lack of cooperation. At the same
> time, the decision to open a manufacturing facility in another
> country to avoid antidumping and/or countervailing duties on such

13

> items coming from China, in and of itself, is not enough to
> establish transshipment to find substantial evidence of evasion.
> Without any other evidence that would draw the credibility of
> Kingtom's production documentation into question, we cannot
> disregard the provided explanations for certain discrepancies, nor
> can we assume that any other perceived discrepancies lack a
> logical explanation.

Remand Redetermination Addendum at 10.

The Remand Redetermination thus conducted what was absent from the R&R Review: a holistic, critical, commonsense, and reasoned examination and analysis of the agency record, TRLED Determination, and submitted arguments.  Accordingly, CBP has properly explained its reasoning and change in position on remand, which is all that is required to establish that the Remand Redetermination is neither arbitrary or capricious, nor an abuse of discretion.

## II.     The Record Does Not Contain Substantial Evidence of Evasion

Not only was CBP's reasoning and change in position regarding the lack of substantial evidence of evasion adequately explained and supported in the Remand Redetermination, it was also correct.  During an EAPA investigation, CBP "shall make a determination, based on substantial evidence, with respect to whether covered merchandise was entered into the customs territory of the United States through evasion."  19 U.S.C. § 1517(c)(1)(A).  Substantial evidence requires that an agency articulate "a 'rational connection between the facts found and the choice made.'"  *Royal Brush Mfg., Inc. v. United States*, 545 F. Supp. 3d 1357, 1365 (Ct. Int'l Trade 2021) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  That another conclusion could rationally be drawn from the record evidence does not defeat an agency's determination.  *Id.*

As this Court has recently explained, the "substantial evidence" standard requires CBP to explain "the evidence on which it relied and why it found the totality of that evidence supported

14

its conclusion, and it addressed the parties' evidence and explained why it found that

unconvincing." *American Pacific Plywood, Inc. v. United States,* Court No. 20-03914, 2023 WL

4288346, at *13 (Ct. Int'l Trade June 22, 2023). Thus, "in an EAPA proceeding the court is to

determine whether Customs applied the substantial evidence standard in reaching its final

determination," and if so, determine whether CBP's "conclusions are not arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." *Id*.

      Before turning to the particulars of the AEFTC's arguments, we take a step back to see

the forest for the trees, and highlight that neither the TRLED Determination nor the R&R

Review found any affirmative evidence that Kingtom imported aluminum extrusions from China

and transshipped those extrusions through its facility in the Dominican Republic. This is

unsurprising, as such a speculative transshipment scheme makes little logistical or monetary

sense. Indeed, CBP's prior affirmative determinations of evasion, as well as the AEFTC's

present arguments for evasion, never address or answer why Kingtom would build a massive

extrusions production facility in the Dominican Republic, purchase expensive equipment with

the capacity to make millions of pounds of extrusions monthly, hire hundreds of employees,

source the necessary materials and supplies from all over the world to make the extrusions, and

ensure compliance with the Dominican Republic-Central America Free Trade Agreement

(CAFTA-DR) to secure duty-free status, just to import and then export Chinese-origin extrusions

that evade the Orders. *See, e.g.,* C.R. 809 (EAPA 7348 TRLED Determination); C.R. 14

(Attaché Report); TRLED Determination; R&R Review; Remand Redetermination Addendum;

CAFTA-DR; NY N310801 (Apr. 14, 2020). Neither the prior CBP determinations of evasion

nor the AEFTC consider how such a scheme would even be profitable.

Moreover, such a scheme would not be compatible with Kingtom's business model, which is to produce custom extrusions to fulfill orders with short lead times, and then quickly ship those custom extrusions from the Dominican Republic to the United States and elsewhere in North America.  TRLED Determination at CR049726; R&R Review at PR034685; Remand Redetermination Addendum at 5, 7.  Producing the custom extrusions in China for clandestine shipment to the Dominican Republic, only to be repackaged by Kingtom for export to the United States, would likely take weeks or months beyond the required receipt dates.

Many of TRLED's initial findings of evasion focused on certain discrepancies in the documents and information submitted by Kingtom and the Importers.  Yet in most instances, as discussed further below, TRLED did not request that the parties address the purported discrepancies with additional materials or explanations.  Nor were the bulk of the alleged discrepancies material to the question of whether evidence existed that Kingtom imported extrusions from China and exported those extrusions through its facility in the Dominican Republic.  Where discrepancies in the submissions were potentially material, such as Kingtom's production capacity, the details of its manufacturing processes, and its sales-to-production numbers, the Importers and Kingtom provided additional and consistent records supporting their figures and representations, as well as sensible explanations to resolve any outstanding questions regarding the supplied documentation.

The insinuation that Kingtom's ownership by Chinese nationals makes transshipment all the more likely (AEFTC Mot. at 2, 19)—an implication that is speculative at best—is belied by the fact that Kingtom is staffed by experienced extrusion producers from China and the business is located in the Dominican Republic to take advantage of the country's free-trade status to produce and export extrusions in an advantageous environment.  *See, e.g.,* EAPA 7348 TRLED

Determination; Attaché Report; TRLED Determination; R&R Review; Remand Redetermination Addendum.  Indeed, there is no dispute that the Dominican Republic is the country of origin for the extrusions exported by Kingtom.  *See* EAPA 7348 TRLED Determination; Attaché Report; TRLED Determination; NY N310801.  So although there is no evidence in the record whatsoever that Kingtom imports aluminum ingot or scrap from China to make the exported extrusions, even if Kingtom did import Chinese-origin extrusion inputs, CBP has already ruled that the act of rendering the ingot and scrap into extrusions at Kingtom's facility makes the resulting extrusions a product of the Dominican Republic.  *Id.*

Therefore, on remand, CBP properly determined that there is not substantial evidence of evasion.  In the end, there is only speculation about the possibility of transshipment, a possibility that surely exists with any foreign company that has business dealings with both China and the United States.  Nonetheless, the AEFTC maintains that the purported discrepancies in Kingtom's records give rise to substantial evidence of evasion.  AEFTC Mot. at 21-23.  The AEFTC also claims that the Remand Redetermination's "factual findings" are not supported by the record.  *Id*. at 23-30.  The AEFTC is wrong on both counts.

### A.  The Record Does Not Contain Widespread Discrepancies Evidencing Evasion

The AEFTC asserts that "{t}here were discrepancies with respect to Kingtom's production and equipment usage records, supplier and input purchases, and accounting and payment," and as a result, "{t}he widespread discrepancies themselves constituted substantial evidence that Kingtom did not produce the claimed extrusions."  AEFTC Mot. at 21.  In the Remand Redetermination, CBP disagreed, and explained that many of the purported discrepancies had logical explanations that were either not considered or disregarded during the investigation.

For instance, on remand, CBP found that the TRLED Determination treated Kingtom's monthly theoretical production volume and its monthly sales figures interchangeably, despite these figures representing completely different values.  Remand Redetermination Addendum at 5.  As CBP explained in the Remand Redetermination, because Kingtom's business model is to make custom aluminum extrusions to order, Kingtom's monthly production and sales figures would naturally fluctuate and differ, depending on what products were ordered and when those orders were paid.  *Id.* at 5.  Such conflation and lack of context will invariably result in perceived but nonexistent "discrepancies."

On remand, CBP also found that the TRLED Determination neglected to follow up and clarify any perceived inconsistencies in Kingtom's production records, and instead relied on a generalized statement in one of the AEFTC's expert declaration "that some of the aluminum extrusion presses present at Kingtom could not produce the sizes of aluminum extrusions exported to the United States."  Remand Redetermination Addendum at 6.  But in the Remand Redetermination, CBP observed that "{t}here is no evidence within the record, however, that limitations on the production capabilities of the aluminum extrusion presses at Kingtom were tested and proven correct."  *Id*.  Moreover, on remand, CBP discredited the AEFTC expert declaration because it "does not state definitively that Kingtom could not produce the size of the aluminum extrusions, nor is there evidence that Kingtom was asked about the sizes of the aluminum extrusions that its presses could produce."  *Id*.

CBP also noted that given the opportunity, the Importers and Kingtom could have explained the inconsistencies previously identified in the TRLED Determination but left unaddressed in the R&R Review, as the explanations for the discrepancies existed on the record. Remand Redetermination Addendum at 6.  But the so-called inconsistencies were never followed

up on, and moreover, "minor discrepancies in financial records or invoices are not indicative of a lack of aluminum extrusion production capacity." *Id*.

Taken together, what the TRLED Determination and the AEFTC view as discrepancies (which somehow substantially demonstrates evasion via a transshipment scheme), CBP logically resolved otherwise in its Remand Redetermination.

## B.  CBP's Findings Are Supported By The Record

Similarly, the AEFTC contends that the Remand Redetermination's factual findings of no evasion are not supported by the record, as evidenced by discrepancies in Kingtom's records of "supplier and input purchases, raw materials, production activity, size capabilities, and financial transactions," which "provide substantial evidence that Kingtom did not produce the claimed extrusions."  AEFTC Mot. at 23.  We address these purported discrepancies in turn.

First, the AEFTC maintains that, on remand, CBP "erred in dismissing discrepancies with respect to Kingtom's suppliers and purchases."  AEFTC Mot. at 23.  But in the Remand Redetermination, CBP found that Kingtom provided information demonstrating that it sourced the necessary inputs to make extrusions (ingots and scrap) from countries other than China. Remand Redetermination Addendum at 9.  Although the TRLED Determination pointed out potential discrepancies in Kingtom's list of suppliers and materials, CBP found on remand that the record contained a revised list provided by the Importers with explanations of Kingtom's transactions, which CBP was largely able to verify.  *Id*.  Moreover, the Remand Redetermination noted that any other purported supplier discrepancies were not followed-up on during the course of the investigation:

> Further, while the TRLED January 28 Determination indicates that sufficient information was not provided by Kingtom in order to ascertain specific descriptions of the supplies provided by individual raw material suppliers, the record does not show that

> any follow-up to garner more specificity was made when TRLED
> issued the Supplemental RFI to Kingtom as part of the
> investigation in EAPA Cons. Case No. 7348, nor did TRLED
> issue any RFI to Kingtom during this EAPA investigation to
> provide an opportunity to Kingtom to explain possible
> discrepancies.

*Id*.  The AEFTC argues that TRLED was not required to further investigate any supplier

discrepancies, AEFTC Mot. at 24, but even if that were so, we submit that any discrepancies in

and of themselves, especially when they have otherwise logical explanations (as CBP discussed

in the Remand Redetermination) and no direct nexus to evidence of transshipment, do not

constitute substantial evidence of evasion.  *See Consolidated Fibers Inc. v. United States*, 535 F.

Supp. 2d 1345, 1353 (Ct. Int'l Trade 2008) ("To determine if substantial evidence exists, we

review the record in its entirety, including all evidence that 'fairly detracts from the substantiality

of the evidence.'") (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir.

1984)).

Second, the AEFTC argues that CBP "erred in dismissing the discrepancies with respect

to Kingtom's aluminum ingot and scrap purchases."  AEFTC Mot. at 26.  But on remand, CBP

found that, together with myriad other records, raw material purchase documentation

demonstrated that Kingtom had the capability to produce aluminum extrusions in the Dominican

Republic.  Remand Redetermination Addendum at 5.  Such raw materials (ingot and scrap)

documentation was provided by Kingtom in EAPA 7348, and was also placed on the record of

EAPA 7423.  *Id*. at 9.  CBP addressed any purported discrepancies, explaining that "{t}he record

also shows that Kingtom collected the aluminum scrap byproduct created from the production

process and used this in later aluminum extrusion order production.  This would lower the

amount of aluminum scrap that Kingtom would need to purchase and explain [sic] the

discrepancy between raw materials purchased and raw materials used."  *Id*.  As such, any

purported discrepancies were not discrepancies at all, and moreover, not reflective of a transshipment scheme to evade the Orders.

Third, the AEFTC points to perceived discrepancies in Kingtom's bank statements as somehow indicative of substantial evidence of evasion.  AEFTC Mot. at 27-28.  But CBP explained on remand that the discrepancies identified by TRLED in Kingtom's bank statements were small figures, the majority of which could be explained by the bank charging a transaction fee.  Remand Redetermination Addendum at 6.  CBP noted that although TRLED never requested an explanation for the purported discrepancies, explanations could nonetheless be found on the record, and in any event, any remaining small discrepancies in the bank records are not indicative of a lack of aluminum extrusion production capacity at Kingtom's facilities.  *Id*.

Finally, the AEFTC contends that the Remand Redetermination discounted both the minimal production activity observed at Kingtom's facilities, as well the sizing capabilities of Kingtom's extrusion presses.  AEFTC Mot. at 28-29.  In particular, the AEFTC points to a declaration by their industry expert to argue that Kingtom's machines were not operational at the time of a site visit, and that the size of dies present at Kingtom's facility did not match the extrusions sold in the United States.  *Id*. at 29.

In the Remand Redetermination, CBP discredited the industry expert's declaration as not supported by the record evidence.  Specifically, CBP found that "{t}here is no evidence within the record, however, that limitations on the production capabilities of the aluminum extrusion presses at Kingtom were tested and proven correct.  The alleger's expert declaration does not state definitively that Kingtom could not produce the size of the aluminum extrusions, nor is there evidence that Kingtom was asked about the sizes of the aluminum extrusions that its presses could produce."  Remand Redetermination Addendum at 6.

On remand, CBP also discredited the AEFTC's experts' site visit reports, stating that exact dates were not provided for the visits, "so it is not possible to compare exact times of visits to the production records that are in the record." *Id*. at 7. Moreover, CBP explained that any lack of production observed on isolated occasions does not mean that Kingtom's machines were not operational at other times, especially since Kingtom produces goods to order and does not produce a steady stream of extrusions. *Id*. CBP thus reasonably concluded that "{t}hese fluctuations in production are expected when the goods are produced to order, as Kingtom's submissions demonstrate. The production records show these fluctuations and that Kingtom's production increased over time as it received more orders to fill." *Id*.

CBP also walked through the limitations of the Attaché Report and the experts' site visits, noting that such provide only short snapshots of the production that occurred at Kingtom's facility. Remand Redetermination Addendum at 8. Thus, on remand, CBP concluded: "In light of the evidence provided by Kingtom, to support a conclusion of insufficient production/production capacity, the administrative record needs to contain greater evidence than declarations opining on overall production capacity after only minimal visits to the manufacturer." *Id*.

Ultimately, the minor record discrepancies that the AEFTC views as evidence of evasion, CBP, on remand, has placed in their overall context, provided commonsense explanations, and noted that without fulsome follow-up, are little more than circumstantial grounds to speculate on an alleged, but unproven, transshipment scheme. Accordingly, CBP's conclusion on remand that the agency record does not contain substantial evidence of evasion is not arbitrary, capricious, or an abuse of discretion.

### III.    CBP Correctly Declined To Apply Adverse Inferences On Remand

The AEFTC also argues that CBP acted arbitrarily in not applying adverse inferences to Global, Industrias, JL, and Puertas for not submitting corrected public summaries during the remand proceedings.  AEFTC Mot. at 30.  As discussed below, CBP properly declined to impose adverse inferences on these Importers for several reasons.

As made clear by CBP in declining to impose adverse inferences on remand here, EAPA authorizes CBP to impose adverse inferences against uncooperative parties to an investigation at its discretion.  *See* Remand Redetermination at 18.  19 U.S.C. § 1517(c)(3)(a) provides:

> If the Commissioner finds that a party or person described in
> clause (i), (ii), or (iii) of paragraph (2)(A) has failed to cooperate
> by not acting to the best of the party or person's ability to comply
> with a request for information, the Commissioner ***may***, in making a
> determination under paragraph (1), use an inference that is adverse
> to the interests of that party or person in selecting from among the
> facts otherwise available to make the determination.

Emphasis added.  *See also* 19 C.F.R. § 165.6 (CBP's regulations implementing this provision of EAPA, which echo the discretionary terms of the statute).  Thus, even if a party did not cooperate to the best of its ability to respond to a particular RFI from CBP, ultimately the decision whether to apply adverse inferences or not is entirely within the purview of the agency. CBP is under no affirmative obligation to impose adverse inferences, one way or the other. Nonetheless, CBP had good reason to not impose adverse inferences here.

As recounted above, we moved for voluntary remand of this case so that CBP could

> (1) provide the parties with public summaries of business
> confidential information in the administrative record; (2) review
> and consider documents that were mistakenly omitted from the
> administrative record; and (3) revisit and reweigh the record
> evidence in light of CBP's remand determination in EAPA Consol.
> Case No. 7348, *Global Aluminum Distributor LLC et al. v. United
> States et al.*, Court No. 21-00198 (*Global*) in order for CBP to
> reevaluate its decision that substantial evidence of evasion exists.

ECF No. 65.  In granting the Government's motion to remand, this Court found that these

grounds satisfied the "substantial and legitimate standard" required for such relief.  ECF No. 70.

Thus, remand here specifically imposed obligations on CBP alone, and no other party, to provide

public summaries of business confidential information on the record, as well as to review and

reconsider certain documents and the record evidence as a whole.  In other words, CBP was the

only party required to provide *any* documents during the remand proceedings.

Yet on remand, CBP arguably exceeded the scope of the requested and ordered remand

by requesting that all of the parties submit certain revised documents with public summaries of

bracketed business confidential information in compliance with 19 C.F.R. § 165.4(a)(2).  *See*

ECF No. 76-2, Remand P.R. 1 at 000004 (9/14/22 TRLED Letter).  CBP later explained that

"{w}e reopened the record to correct procedural items related to public summary requirement in

accordance with the 19 C.F.R. 165.4(a)(2) and *Royal Brush Manufacturing, Inc. v. United States*,

483 F.Supp.3d 1294 (CIT 2020)."  ECF No. 76-2, Remand P.R. 2 at 000108 (9/16/22 TRLED

Email).  After confusion and questions from certain Importers, *see* ECF No. 76-2, Remand P.R.

5, CBP further clarified that:

> In light of *Royal Brush Manufacturing, Inc. v. United States*, 483
> F.Supp.3d 1294 (CIT 2020), CBP has changed its practice and
> requires that all submissions comply with section 165.4(a)(2) in
> addition to providing public summaries for confidential documents
> that CBP places on the records. As part of this remand proceeding,
> CBP has reviewed the submissions made by your client, as well as
> other parties, and has determined that they do not comply with
> 165.4(a)(2). As such, we are reopening the record to allow the
> parties to submit revised public summaries of confidential
> information and providing the opportunity to submit any rebuttal
> information that the parties would have submitted if they had
> access to the public summaries during the original investigation.

ECF No. 76-2, Remand P.R. 6 at 000167 (9/19/22 TRLED Email).  Thus, for the first time on remand, CBP believed that, in light of *Royal Brush I*, certain previously accepted public summaries submitted by the parties were no longer complaint with the agency's regulations.

Of significance, in all of the initial remand communications from TRLED to the parties, no mention was made that failure to provide the requested revised public summaries would be potential grounds for applying adverse inferences.  It was only on October 14, 2022, in a message from TRLED to Global, Industrias, JL, and Puertas, that the prospect of adverse inferences was invoked.  *See* ECF No. 77-1, Remand P.R. 142 at 029988 ("Please be advised that, should the submissions fail to be corrected by the deadline, CBP may apply inferences adverse to the company and select from among the facts otherwise available to make a determination as to evasion pursuant to 19 CFR 165.27.") (10/14/22 TRLED Email).  We note that the record is unclear as to why this statement was included at this time, whether purposefully or as pro forma boilerplate.  And we further note that no subsequent communication from TRLED to the parties during the remand period included this language or any similar language concerning potential adverse inferences.  *See* ECF No. 77-1, Remand P.R. 143-147.

In any event, as a result of the 10/14/22 TRLED Email, counsel for Industrias, JL, and Puertas emailed undersigned counsel and all parties to request a conference with the Court in order to clarify the scope of the court-ordered remand proceedings in light of CBP's request that the parties submit revised public summaries.  Thereafter, undersigned counsel relayed consolidated-plaintiffs' counsel's message and request to CBP.  After considering the matter, CBP advised undersigned counsel that should Global, Industrias, JL, and Puertas not provide revised public summaries, there would be no grounds for adverse inferences.  Undersigned counsel then relayed CBP's position on the matter to counsel for Industrias, JL, and Puertas.  The

AEFTC construes these communications as the Department of Justice somehow making an unauthorized decision on behalf of CBP.  AEFTC Mot. at 32.  Setting aside the fact that the applicable statutory and regulatory provisions make CBP's decision whether to apply adverse inferences entirely discretionary, CBP's decision to not apply adverse inferences here was solely its own, and moreover as discussed further below, was specifically explained by the agency. Additionally, the AEFTC points to no authority that any party to a remand, including the Department of Justice, may not confer to discuss whether intervention from the Court is required to clarify the scope of court-ordered remand proceedings.

Furthermore, even if it was within the scope of the remand for CBP to request revised public summaries from the parties, as explained in its Remand Redetermination, CBP "considered the procedural posture of this case," and specifically reasoned that "the failure of the four importers to resubmit revised public summaries did not create a gap of information on the administrative record, as on remand CBP was not requesting any new information, but revised public versions of information already on the administrative record."  Remand Redetermination at 18.  CBP, therefore, concluded that "{t}o apply adverse inference for failure to resubmit public versions, on remand, would be futile as CBP already reviewed and considered confidential versions of all documents and the parties have already accessed such documents under the judicial protective order."  *Id*. at 18-19.

Accordingly, CBP's decision to not apply adverse inferences on remand was not arbitrary, capricious, an abuse of discretion, nor otherwise not in accordance with law.

26

**<u>CONCLUSION</u>**

For these reasons, we respectfully request that the Court sustain the Remand

Redetermination as supported by the record, as not arbitrary and capricious, and as otherwise in

accordance with the law.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    <u>/s/ Justin R. Miller</u>
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

<u>/s/ Aimee Lee</u>
AIMEE LEE
Assistant Director

<u>/s/ Alexander Vanderweide</u>
Of Counsel:    ALEXANDER VANDERWEIDE
Tamari J. Lagvilava    Senior Trial Counsel
Office of Chief Counsel    Department of Justice, Civil Division
U.S. Customs and Border Protection    Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-0482 or 9230
*Attorneys for Defendant*

Dated: July 24, 2023

27

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this response brief contains 7768 words, excluding any materials excluded from those Procedures' requirements, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s/ Alexander Vanderweide</u>